UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZACHARY SUCCOW, SAMUEL TOWNE, CONNECTICUT CITIZENS DEFENSE LEAGUE, INC., SECOND AMENDMENT FOUNDATION, INC., *Plaintiffs*, <br><br> v. <br><br> PAMELA JO BONDI, in her official capacity; RONNELL HIGGINS, in his official capacity; MARGARET A. KELLEY, in her official capacity; PAUL J. NARDUCCI, in his official capacity; JOHN BUCHERATI, in his official capacity; PATRICK DALEY, in his official capacity; *Defendants*. | 3:25-CV-250 (SVN) <br><br><br><br><br><br> March 14, 2025 |

**RULING AND ORDER ON PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

Sarala V. Nagala, United States District Judge.

In this Second Amendment action, Plaintiffs Zachary Succow, Samuel Towne, Connecticut Citizens Defense League, Inc. ("CCDL"), and Second Amendment Foundation, Inc. ("SAF") raise facial and as applied constitutional challenges to state and federal laws that prevent individuals ages 18 to 20 from acquiring, possessing, or carrying a handgun or handgun ammunition. More specifically, Plaintiffs challenge the constitutionality of the following laws: 18 U.S.C. § 922(b)(1), 18 U.S.C. § 924(a)(1)(D), 18 U.S.C. § 922(c), 27 C.F.R. § 478.99(b)(1), Conn. Gen. Stat § 29-28(b), Conn Gen. Stat § 29-34(b), and Conn. Gen. Stat. § 29-36f. These laws are enforced by Defendants United States Attorney General Pamela Jo Bondi; Commissioner of Connecticut's Department of Emergency Services and Public Protection Ronnell Higgins; State's Attorney

Margaret A. Kelley; State's Attorney Paul J. Narducci; Seymour, Connecticut, Police Chief John Bucherati; and Norwich, Connecticut Police Chief Patrick Daley.

Plaintiffs have filed an emergency motion seeking a temporary restraining order ("TRO") that would enjoin Defendants from enforcing the laws mentioned above during the pendency of this lawsuit. Pls.' Emergency Mot., ECF No. 4. Defendants oppose Plaintiffs' motion for a TRO, arguing that Plaintiffs have failed to demonstrate irreparable harm absent an injunction, and that public interest and the balance of equities are served by denying the TRO.[1] Because Plaintiffs have failed to establish irreparable harm and that the public interest and balance of the equities support issuance of the TRO, the Court denies Plaintiffs' motion.

## I.    BACKGROUND

Federal law bars individuals and companies with federal firearms licenses from selling or delivering handguns or handgun ammunition to individuals under 21. *See* 18 U.S.C. § 922(b)(1); 18 U.S.C. § 922(c); 18 U.S.C. § 924(a)(1)(D); 27 C.F.R. § 478.99(b)(1). Connecticut state law bars individuals from selling or otherwise providing a handgun to individuals under 21, and prohibits individuals under the age of 21 from obtaining a handgun permit or applying for an eligibility certificate for a handgun. *See* Conn. Gen. Stat § 29-28(b), Conn Gen. Stat § 29-34(b), and Conn. Gen. Stat. § 29-36f. For the purposes of this ruling, the Court will refer to these limitations collectively as "state and federal handgun restrictions."

The plaintiffs in this action include both individuals (Zachary Succow and Samuel Towne) and organizations (CCDL and SAF). The individual Plaintiffs assert that apart from being 19 years

---

[1] Following a status conference on February 25, 2025, the Court ordered Defendants to file response briefs to Plaintiffs' emergency motion for a TRO that were limited to the following issues: (1) irreparable harm, in light of Plaintiffs' allegation of a constitutional violation; (2) the balance of hardships; and (3) the public interest. Order, ECF No. 28. As such, Defendants' opposition briefs and Plaintiffs' reply brief—and this ruling—focus on these three factors, rather than the merits of Plaintiffs' underlying claims. Additionally, Plaintiffs disclaimed reliance on their equal protection claim during the status conference, so the Court does not address it here.

old, they meet all state and federal requirements necessary to obtain handgun permits and lawfully own a handgun; that they each intend to obtain a handgun and handgun ammunition for self-defense and other lawful purposes; and that they would do so if the law did not prohibit it. *See* Pls.' Ex. C, Decl. of [Zachary A. Succow],[2] ECF No. 4-4 at 2, ¶¶ 2, 7, 8, 9; Pls.' Ex. D, Decl. of Samuel Towne, ECF No. 4-5 at 2, ¶¶ 2, 8, 9, 10, 11. Plaintiffs CCDL and SAF are non-profit educational foundations that engage in advocacy, legal action, education, and research, among other activities, to "preserve the effectiveness of the Second Amendment." *See* Compl., ECF No. 1 at 5, 6, ¶¶ 25, 30. Both have broad memberships, with CCDL reporting 41,000 members and supporters nationwide and SAF reporting more than 700,000 members and supporters nationwide. *Id.* In their complaint, Plaintiffs allege that the federal and state laws they are challenging violate the Second Amendment of the United States Constitution both facially and as applied to the individual Plaintiffs Zachary Succow and Samuel Towne. *See generally* ECF No. 1. Age-based state and federal handgun restrictions Plaintiffs contend, are "speculativ[e]" and "arbitrar[y]," and are not rooted in "our nation's history and traditions." *See id.* at 2, ¶¶ 4, 5.

Presently before the Court is Plaintiffs' emergency motion seeking an *ex parte* TRO, or in the alternative a TRO, and a preliminary injunction ("PI") enjoining Defendants from enforcing the allegedly unconstitutional state and federal handgun restrictions. *See generally* Pl.'s Emergency Mot., ECF No. 4. The Court denied the motion insofar as it sought an *ex parte* TRO and convened a status conference with all parties. Order, ECF No. 16. At the February 25, 2025, status conference, the Court raised the possibility of converting Plaintiffs' request for a TRO into one for a PI and setting a briefing schedule accordingly. Order, ECF No. 28. Plaintiffs objected

---

[2] The Court notes that this Exhibit is titled "Declaration of Nathan Stackpole," but the contents of the declaration themselves pertain to Zachary A. Succow. As such, the Court believes Plaintiffs intended for this Declaration to reflect Zachary A. Succow's testimony and considers it as such.

and requested a ruling on the TRO and the PI separately. *Id.* The Court ordered briefing on the limited issues set forth above, and has now received the requested briefing from the parties. *See supra,* n.1.

## II. LEGAL STANDARD

To begin, the Court notes that a TRO is "an extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*). It is "never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and whether to grant such relief "rests in the sound discretion of the district court." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

In the Second Circuit, the standard for issuing a TRO is the same as the standard for a PI. *See Fairfield Cty. Med. Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd as modified sub nom. Fairfield Cty. Med. Ass'n v. United Healthcare of New England, Inc.*, 557 F. App'x 53 (2d Cir. 2014).[3] A party seeking a TRO that "will affect government action taken in the public interest pursuant to statute or a regulatory scheme" must demonstrate: (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits,[4] (3) public interest weighing in favor of granting the injunction, and (4) that the balance of equities tips in its favor. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 279–80 (2d Cir.

---

[3] The Court notes that because orders on motions for temporary restraining orders are not appealable, the majority of available appellate case law reflects rulings on motions for preliminary injunctions, with a more robust record.

[4] The Second Circuit has also announced an "alternative, less demanding 'serious questions' standard for obtaining preliminary injunctive relief, which authorizes injunctive relief if the movant has shown imminent irreparable harm as well as 'sufficiently serious questions going to the merits of its claims to make them fair ground for litigation plus a balance of the hardships tipping decidedly in favor of the moving party.'" *We The Patriots USA Inc.*, 17 F.4th at 279, n.13 (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). In cases involving government action taken in the public interest pursuant to a statute or regulatory scheme, however, the more lenient "serious questions" standard does not appear to apply. *Id.*; *Plaza Health Lab'ys., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989).

2021), *opinion clarified* 17 F.4th 266, 268 (2d Cir. 2021); *Yang v. Kosinski*, 960 F.3d 118, 127 (2d Cir. 2020).

Under these circumstances, "the injunction will only be granted if both irreparable harm and a likelihood of success on the merits are shown." *Nat'l Ass'n for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 75 (D. Conn. 2023) (citing *Plaza Health Lab'ys. Inc.*, 878 F.2d at 580); *see also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985) ("Even if we were to agree that plaintiffs' likelihood of success is as clear as the district court concluded, on this record plaintiffs still failed to establish the irreparable harm essential to entitle them to the extraordinary relief of a preliminary injunction."). Further, where the Government is an opposing party, the public interest and balance of equities factors "merge." *Nken v. Holder*, 556 U.S. 418, 435–36 (2009); *see also Mintz v. Chiumento*, 724 F. Supp. 3d 40, 65 (N.D.N.Y. 2024) (noting that consideration of these factors also merges where state officials are the opposing party) (citing *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021)).

### III. DISCUSSION

For the reasons discussed below, Plaintiffs' emergency motion for a temporary restraining order is denied because they fail to establish irreparable harm absent injunctive relief, and the public interest and balance of the equities tip in Defendants' favor. The Court declines to rule on Plaintiffs' likelihood of success on the merits at this juncture.

#### A. Irreparable Harm

Irreparable harm is "'the single most important prerequisite for the issuance of a preliminary injunction.'" *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)); *see also Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir.

1999) (*per curiam*) (describing irreparable harm as "the single most important prerequisite for the issuance of a preliminary injunction" and noting that "[i]n the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied."). To satisfy the irreparable harm requirement, "the moving party 'must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" *State Farm Mut. Auto. Ins. Co.*, 120 F.4th at 80 (quoting *Faiveley*, 559 F.3d at 118) (alteration in original).

The Second Circuit has held that allegation of a constitutional violation results in a "presumption of irreparable injury." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). But, as district courts have noted, "[t]he Second Circuit has not clearly resolved the question of whether the infringement of a constitutional right is *always* considered irreparable harm." *Lore v. City of Syracuse*, No. 00-cv-1833 HGM DEP, 2001 WL 263051, at *7 (N.D.N.Y. Mar. 9, 2001) (emphasis added); *Stallworth v. Joshi*, No. 17-cv-7119 (RJS), 2017 WL 8777378, at *7 (S.D.N.Y. Nov. 22, 2017) (recognizing that "an allegation of a constitutional violation is not a magic wand that can be waved to conjure up irreparable harm"); *Gazzola v. Hochul*, 645 F. Supp. 3d 37, 55 (N.D.N.Y. 2022). In assessing whether an allegation of a constitutional violation constitutes irreparable harm, courts consider the nature of the alleged constitutional violation, with cases involving substantive constitutional rights being more likely to trigger the presumption of irreparable harm. *See Stallworth*, 2017 WL 8777378, at *7 (holding that asserting a procedural due process violation was insufficient); *Lore*, 2001 WL 263051, at *7.[5]

---

[5] At least one district court has also recognized that, in cases alleging violations of constitutional rights, "the likelihood of success on the constitutional claim is inextricably intertwined with whether irreparable harm exists." *Dimartile v. Cuomo*, No. 1:20-cv-859 (GTS/CFH), 2020 WL 4877239, at *8 (N.D.N.Y. Aug. 19, 2020).

Whether a party has delayed in seeking injunctive relief may defeat any presumption of irreparable injury, however. *See Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005). As the Second Circuit has noted, preliminary injunctive relief is "generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A.*, 756 F.2d at 276 (holding that a party's "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury" (internal quotation marks omitted)); *Goldstein v. Hochul*, No. 22-CV-8300 (VSB), 2022 WL 20305832, at *2 (S.D.N.Y. Oct. 3, 2022) (assessing delay in case alleging violation of constitutional rights). Indeed, "months-long delays in seeking [injunctive relief] have repeatedly held by courts in the Second Circuit to undercut the sense of urgency. . . . Because temporary restraining orders are fundamentally an emergency relief mechanism, delay in seeking the remedy suggests that the remedy is not really needed." *Goldstein*, 2022 WL 20305832, at *2 (alteration in original) (internal citations and quotation marks omitted). Relevant delays include the time period following enactment of a law, before a party seeks a TRO or PI to enjoin enforcement of that law, and the time period between a plaintiff's learning of an alleged violation and seeking a TRO or PI to enjoin it. *Id.*; *see also Weight Watchers*, 423 F.3d at 144; *Majorica, S.A. v. R.H. Mach & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985) (*per curiam*) ("Lack of diligence, standing alone, may, however, preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm rather than occasioned prejudice." (internal citations and quotation marks omitted)).

Here, even assuming that a presumption of irreparable harm arises from Plaintiffs' allegations of Second Amendment violations, any such presumption would be undermined by

Plaintiffs' own delay in filing this lawsuit. To start, the federal laws limiting the rights of individuals under the age of 21 to acquire firearms have been in effect for fifty-seven years, since 1968. *See* Def. Bondi's Br., ECF No. 32, at 2, 8; *see also* Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. IV, § 922(b)(1) ("It shall be unlawful for a licensed importer, licensed manufacture, or licensed dealer to sell or deliver any firearm to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age, if the firearm is other than a shotgun or rifle."). Similarly, Plaintiffs do not contend that state laws limiting handgun rights of 18- to 20-year-olds were recently enacted, *see generally* Pls.' Emergency Mot., and the Court's research suggests the relevant provisions were enacted in 1994 (Conn. Gen. Stat. § 29-36f and amendments to Conn. Gen. § 29-34(b)) and 2001 (Conn. Gen. Stat. § 29-28(b)). These laws cannot fairly be characterized as new, so at least the organizational Plaintiffs' delay in filing suit to enjoin the laws is plausibly measured in years. Additionally, the individual Plaintiffs turned 18 well over a year ago, and thus could have brought suit months ago. *See* Decl. of [Zachary A. Succow] at 2, ¶ 2; Decl. Samuel Towne at 2, ¶ 2.

Given that Plaintiffs could have brought this suit and sought injunctive relief quite some time ago, emergency relief through a TRO is not warranted here. Plaintiffs assert that neither Succow nor Towne "delayed bring [sic] this suit once they learned of their right to pursue their claims and had a realistic opportunity to do so – *i.e.*, when connecting with organizations with the necessary resources." Pls.' Reply, ECF No. 33 at 6. But they provide no evidence to support this assertion. That Plaintiffs' counsel had to search for individual plaintiffs to join the lawsuit for over a year—as counsel acknowledged at the status conference—suggests this is not a true emergency.

Even accepting the individual Plaintiffs' explanation of their delay, however, it bears noting that this case also involves organizational Plaintiffs with membership rosters in the tens of

thousands whose primary purpose is to advance Second Amendment rights, including through legal action. *See* Compl. ¶¶ 25, 30, 31, 32. Organizational Plaintiffs report expending "significant time, money, effort, and resources" to address the issues central to this case and explain they have "divert[ed] previously allocated funds, energies, and resources to the cause of this legal action." *Id.* ¶¶ 26, 27; *see also id.* ¶ 32 (describing the resources SAF has dedicated to this case). Further, they report that the enforcement of laws central to this case has "adversely and directly harmed and injured" many of their individual Connecticut members. *Id.* ¶ 31. Despite these dedicated resources and the asserted breadth of the alleged harm, Plaintiffs still delayed filing suit until after the statutes had been in place for decades. This delay calls into question the emergent nature of Plaintiffs' request. *See Citibank, N.A.*, 756 F.2d at 277 (noting that it "strain[ed] one's credulity to argue that a major financial institution . . ., with all its resources and information sources," could not have acted more quickly to seek injunctive relief in a trademark case). Plaintiffs therefore have not sustained their heavy burden of justifying "extraordinary and drastic" emergency relief. *Mazurek*, 520 U.S. at 972.

In sum, Plaintiffs' delay in bringing this lawsuit "undercuts the sense of urgency" Plaintiffs assert in relation to the alleged irreparable harm that will persist if their request for a TRO is denied. As such, the Court finds that Plaintiffs have failed to establish the irreparable harm absent injunctive relief.

### B. Public Interest & Balance of the Equities

The Court also finds that both the public interest and the balance of the equities favor denying Plaintiffs' motion seeking a TRO. In evaluating both the public interest and a balancing of the equities, the Court must "consider the effect on each party of granting or withholding of the

requested relief" and "the public consequences in employing the extraordinary remedy of injunction." *Mintz*, 724 F. Supp. 3d at 65–66 (quoting *Winter*, 555 U.S. at 24).

Plaintiffs do not dispute that both the federal and state laws at issue in this case reflect a legislative intent of ensuring public safety. *See* Def. Bucherati Br., ECF No. 29 at 11–12 (discussing the public safety and public well-being purposes of Connecticut gun laws and regulations); State Defs.' Br., ECF No. 30 at 2, 14 (noting that the purpose of the state laws is to ensure public safety and public health); Def. Bondi Br., ECF No. 32 at 2, 8 (discussing Congressional intent in enacting handgun restrictions for "juveniles"). "It is well established that states have 'substantial, indeed compelling, governmental interests in public safety and crime prevention.'" *Mintz*, 724 F. Supp. 3d at 66 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F. 3d 242, 261 (2d Cir. 2015)). Indeed, the Supreme Court has acknowledged that states may issue handgun regulations as one of many tools to address public safety concerns. *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008).

Granting a TRO enjoining enforcement of the federal and state laws at issue in this case would severely undermine Defendants' ability to protect public safety, and possibly irrevocably threaten public safety, should Defendants ultimately prevail on the merits. If enforcement of the relevant laws were enjoined through a temporary restraining order, 18- to 20-year-old individuals would be able to obtain handguns and handgun ammunition, after completing any necessary permitting requirements. Should the case ultimately resolve on the merits in favor of Defendants, such handguns would be remarkably difficult, if not impossible, to claw back. Although Plaintiffs assert that they have aided clients in surrendering firearms permits and firearms to the appropriate law enforcement authorities in the past and would do the same in this case if Defendants were to win on the merits, *see* Pls.' Emergency Mot. at 39, such a task would be very challenging, to say

the least, and raises the possibility of firearms remaining in the hands of young adults without valid licenses or the legal authority to possess them.

At the same time, the Court acknowledges that public interest disfavors the enforcement of unconstitutional laws and that administrative hardships, like those asserted in Defendants' briefs, are, on their own, insufficient to permit an ongoing alleged constitutional violation. *See Mitchell v. Cuomo*, 748 F.2d 804, 807–08 (2d Cir. 1984); *Mintz*, 724 F. Supp.3d at 66 ("There is also a public interest in avoiding violations of constitutional rights, as the Government does not have an interest in the enforcement of an unconstitutional law." (internal citations and quotation marks omitted)). But here, the practical difficulties of confiscating the handguns and the resulting possible safety threats that would flow from an order granting the motion for a TRO, if Defendants ultimately prevail on the merits, is sufficiently serious so as to tip the scales of this factor in Defendants' favor. As such, the Court finds that the balances of the equities and the public interest weigh in favor of denying the TRO.

### C. Likelihood of Success on the Merits

"Generally, courts are loathe to rush decisions on the merits on such a truncated schedule when complex and novel constitutional law questions are at issue." *Mintz*, 724 F. Supp. 3d at 52. The constitutional law questions at issue here are no exception. Therefore, because the Court finds that Plaintiffs have failed to establish irreparable harm and that the public interest and balance of equities weigh in their favor, the Court need not reach the questions of Plaintiffs' likelihood of success on the merits, or whether the injunction sought is better characterized as mandatory or prohibitory. *See Nat'l Ass'n for Gun Rights*, 685 F. Supp. 3d at 76 (noting that there is a split among district courts in this circuit as to "whether injunctions enjoining enforcement of gun regulations are mandatory or prohibitory").

## IV. CONCLUSION

For the reasons described herein, Plaintiffs' emergency motion for a temporary restraining order is denied. The parties shall meet and confer regarding a briefing and discovery schedule for Plaintiffs' pending motion for a preliminary injunction. Following that conferral, the parties shall jointly file a proposed schedule by March 28, 2025, noting any objections to any other parties' proposals.

**SO ORDERED** at Hartford, Connecticut, this 14th day of March, 2025.

                                               */s/ Sarala V. Nagala*
                                               SARALA V. NAGALA
                                               UNITED STATES DISTRICT JUDGE