## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZACHARY SUCCOW, SAMUEL TOWNE; CONNECTICUT CITIZENS DEFENSE LEAGUE, INC.; AND SECOND AMENDMENT FOUNDATION, INC., | |
| Plaintiffs, | CIV. NO. 3:25-cv-250 |
| v. | |
| PAMELA JO BONDI, in her official capacity; RONNELL HIGGINS, in his official capacity; MARGARET A. KELLEY, in her official capacity; PAUL J. NARDUCCI, in his official capacity; JOHN BUCHERATI, in his official capacity; PATRICK DALEY, in his official capacity; | May 18, 2025 |
| Defendants. | **AMENDED COMPLAINT** |

1.      Plaintiffs desire and intend to acquire, and possess a handgun in their home, and to carry that handgun in public for self-defense. Both rights are guaranteed them by the Second Amendment of the United States Constitution. But based solely on their age, as adults under 21 years of age, Connecticut and Federal law act in concert to deny them these rights in their entirety.

2.      This is an action to uphold Plaintiffs', and those who are similarly situated, right to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution.  This right "guarantee[s] the individual right to possess and carry" firearms and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

3.      In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 584.

4.      In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010), the Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty," and held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

5.      "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634-35.

6.      The "central" – but not the only – holding of the Supreme Court in *Heller* was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780. The Second Amendment also "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592.

7.      This is particularly true when it comes to handguns, as the *Heller* Court has explicitly recognized the handgun as "the quintessential self-defense weapon" in the United States, and that a complete prohibition on their carry and use is necessarily invalid. *Id.* at 629.

8.      But Defendants' laws, including, Conn. Gen. Stat. § 29-28(b) Conn. Gen. Stat. § 29-34(b), Conn. Gen. Stat. § 29-34(b), and Conn. Gen. Stat. § 29-36f, 18 U.S.C. § 922(b)(l) and (c)(1); 27 1 C.F.R. §§ 478.99(b)(l), 478.124(a), and 478.96(b); the related regulations, policies, practices, customs designed to implement the same, and Defendants' continuing enforcement of them, prevent law-abiding, responsible adult citizens under age twenty-one— including Plaintiffs Succow and Towne, and the similarly situated members of Connecticut Citizens Defense League and the Second Amendment Foundation -- from doing so, in violation of the Second and Fourteenth Amendment to the United States Constitution.

9.      "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). Moreover, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (internal citations omitted, emphasis added.).

10.     "[T]he lack of a distinctly similar historical regulation…is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. Indeed, the relevant historical evidence will show that no such similar regulation existed.

11.     Connecticut law prohibits law-abiding adult citizens between the ages of 18 and 20 from purchasing, obtaining ownership of, keeping and bearing (i.e., carrying) handguns – the most popular firearms in the United States – for self-defense and all other lawful purposes.

12.    In Connecticut, a person cannot legally transfer any firearm to another person without Connecticut state police approving the transfer before it takes place. To legally obtain a handgun in any manner and to get the Connecticut state police's approval, a person must possess either a state-issued Handgun Eligibility Certificate or a state-issued Pistol Permit.

13.    A Handgun Eligibility Certificate allows law-abiding citizens in Connecticut who are 21 years of age or older to purchase a handgun and ammunition for home defense, but not to carry the handgun in public. Adults under 21 years of age may not lawfully obtain, or even apply for, a Handgun Eligibility Certificate.

14.    A State Pistol Permit allows law-abiding citizens in Connecticut who are 21 years of age or older to purchase a handgun and ammunition for all lawful purposes, including carrying a loaded handgun in public. Adults under 21 years of age may not lawfully obtain, or even apply for, a State Pistol Permit.

15.    To obtain a State Pistol Permit, a Connecticut resident 21-years or older must first apply for and be issued a Temporary State Pistol Permit from the issuing authority in the town or city in which they live, submit to fingerprinting and a background check, and provide proof of successfully completing a firearm safety course, including live-fire training and instruction on Connecticut firearms law. Adults under 21 years of age may not lawfully obtain, or even apply for, a Temporary State Pistol Permit.

16.    A Temporary State Pistol Permit is valid for sixty days and does not allow a person of any age to purchase a handgun, but does allow a person 21 years and older to carry a handgun within the boundaries of the specific municipality in which the person resides.

17.     Once a Connecticut resident 21-years or older is issued a Temporary State Pistol Permit, the person is allowed, within sixty days of issuance, to apply to the Connecticut State Police for a State Pistol Permit.

18.     A State Pistol Permit is valid for five years and allows a person 21-years of age or older to purchase a handgun and ammunition, and to carry a loaded handgun anywhere in Connecticut carrying a handgun is legal.

19.     The Connecticut State Police also now require that all legal firearm transfers between individuals be conducted through a Federal Firearms Licensee ("FFL") as a precondition to approval.

20.     Federal law prohibits FFLs from selling or delivering handguns to individuals under the age of 21. 18 U.S.C. 924(b)(1).

21.     But for the interaction of these challenged federal and Connecticut laws and administrative policy, adult citizens between the ages of 18 and 20 would be able to lawfully purchase or otherwise obtain ownership of handguns – either from an FFL or a private individual – and to carry handguns in public for self-defense and all other lawful purposes.

22.     Collectively, the challenged federal and Connecticut laws and administrative policy impose a complete bar to adults between the ages of 18 and 20 from being able to lawfully purchase, obtain ownership of, and carry handguns, whether in the home or in public, whether for self-defense or any other lawful purpose.

23.     The combination of Connecticut state and Federal Government's Handgun Bans, and Defendants' actual and threatened enforcement of the same, should and must—

under the text of the Constitution itself, as well as our Nation's history and tradition, and the Supreme Court's precedents—be declared unconstitutional and enjoined.

24.    Plaintiffs Zachary Succow and Samuel Towne are peaceable, law-abiding adult Connecticut citizens who meet all of the qualifications to apply for their choice of handgun certificate or pistol permit, except the age-requirements imposed by Connecticut law.

25.    Plaintiffs desire and intend to exercise their constitutional right to keep and bear arms *in toto*. To keep and/or bear handguns in Connecticut, the Plaintiffs must first be able to legally acquire them.

26.    To do so under the challenged federal/Connecticut regulatory scheme requires the Plaintiffs be eligible to apply first for Temporary State Pistol Permits and then for State Pistol Permits, and requires that at least one avenue of transfer, either through an FFL or private party, be able to legally transfer handguns to law-abiding adults between 18 and 20 years of age.

27.    But for Connecticut's age-based restrictions for the requisite permitting, and the outright ban on the ability of adults under 21 to acquire a handgun, Plaintiffs and other similarly situated, law-abiding, young adult members of the organizational plaintiffs would acquire handguns for all lawful purposes, including self-defense in their homes, and carry them in public for self-defense.

28.    The Plaintiffs bring this action under 42 U.S.C. § 1983 and 28 U.S.C. § 2201-2202 seeking declaratory and injunctive relief against the collective regime of federal law that prohibits law-abiding adult citizens between 18 and 20 years of age from obtaining handguns

from an FFL, and Connecticut laws and administrative policies that foreclose all other legal means for 18 to 20-year-olds to acquire and carry a handgun for lawful purposes.

29.     The Plaintiffs likewise bring this action seeking declaratory and injunctive relief challenging the Connecticut state law establishing 21 years of age as the minimum age for eligibility to apply for either a Temporary State Pistol Permit or a State Pistol Permit, as possession thereof is the only lawful means to carry a handgun in public for self-defense in the state of Connecticut.

## JURISDICTION AND VENUE

30.     The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 2201 as well as 42 U.S.C. § 1983. Venue is appropriate under 28 U.S.C. § 1391 because the plaintiffs and most of the Defendants are domiciled in Connecticut, and all of the factual events giving rise to the cause of action occurred in Connecticut.

## PARTIES

### *Plaintiff Zachary Succow*

31.     Plaintiff Zachary Succow is a citizen of the United States and a resident of Seymour, Connecticut.

32.     Succow is 19 years of age.

33.     But for the challenged federal and Connecticut laws and policies, Succow is not prohibited from exercising his rights under the Second Amendment.

34.     Except for his age, Succow meets all Connecticut requirements to apply for a Handgun Eligibility Certificate to obtain and keep a handgun for home defense.

35.     Succow desires and intends to obtain a handgun for self-defense and all other lawful purposes and would do so but for fear of criminal penalty resulting from the Defendants' enforcement of the challenged laws.

36.     To obtain a handgun, Succow intends to follow Connecticut's handgun permitting scheme by applying for a Eligibility Certificate, the prerequisite Temporary State Pistol Permit and then applying for a State Pistol Permit.

37.     Succow desires and intends to carry a handgun in public for self-defense and all other lawful purposes and would do so but for fear of criminal penalty resulting from the Defendants' enforcement of the challenged laws.

38.     Except for his age, Succow meets all Connecticut requirements to apply for a Temporary State Pistol Permit with which he would temporarily be able to lawfully carry a loaded handgun for self-defense and other lawful purposes and, except for his age, would be able to apply for a State Pistol Permit so that he could carry a loaded handgun for self-defense and other lawful purposes.

39.     The challenged federal and Connecticut laws and policies, prevent Succow from applying for either a Handgun Eligibility Certificate or a Pistol Permit, and thus acquiring or carrying a handgun for self-defense, purely based on his age.

40.     Succow is a member of Connecticut Citizens Defense League and the Second Amendment Foundation.

### Plaintiff Samuel Towne

41.     Plaintiff Samuel Towne is a citizen of the United States and a resident of Norwich, Connecticut.

42.     Towne is 19 years of age.

43.     Towne completed all the required training associated with obtaining a Connecticut Long Gun Eligibility Certificate. The training required to obtain a Long Gun Eligibility Certificate is the same as the training required to obtain a Handgun Eligibility Certificate, a Temporary State Pistol Permit, and a State Pistol Permit.

44.     But for the challenged federal and Connecticut laws and policies, Towne is not prohibited from exercising his rights under the Second Amendment.

45.     Except for his age, Towne meets all Connecticut requirements to apply for a Handgun Eligibility Certificate to obtain and keep a handgun for home defense.

46.     Towne desires and intends to obtain a handgun for self-defense and all other lawful purposes and would do so but for fear of criminal penalty resulting from the Defendants' enforcement of the challenged laws.

47.     To obtain such handgun, Towne intends to follow Connecticut's handgun permitting scheme by applying for a Eligibility Certificate, the prerequisite Temporary State Pistol Permit and then applying for a State Pistol Permit.

48.     Towne desires and intends to carry a handgun in public for self-defense and all other lawful purposes and would do so but for fear of criminal penalty resulting from the Defendants' enforcement of the challenged laws.

49.     Except for his age, Towne meets all Connecticut requirements to apply for a Temporary State Pistol Permit with which he would temporarily be able to lawfully carry a loaded handgun for self-defense and other lawful purposes and except for his age, would be

able to apply for a State Pistol Permit so that he could carry a loaded handgun for self-defense and other lawful purposes.

50.    The challenged federal and Connecticut laws and policies, prevent Towne from applying for either a Handgun Eligibility Certificate or a Pistol Permit, and thus acquiring or carrying a handgun for self-defense, purely based on his age.

51.    Towne is a member of Connecticut Citizens Defense League and the Second Amendment Foundation.

### Plaintiff Connecticut Citizens Defense League, Inc.

52.    Plaintiff, Connecticut Citizens Defense League, Inc. ("CCDL") is a non-profit educational foundation, incorporated under the laws of Connecticut, with its principal place of business in Seymour, Connecticut. Its mission is to preserve the effectiveness of the Second Amendment through legislative and grassroots advocacy, outreach, education, research, publication, legal action, and programs focused on the constitutional right to keep and bear arms. CCDL has over 41,000 members and supporters nationwide, with more than ninety-five percent of its members and supporters being residents of Connecticut. CCDL represents its members and supporters – which include individuals seeking to exercise their right to acquire, possess, and carry firearms for personal protection. CCDL brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public.

53.    CCDL has expended and diverted resources otherwise reserved for different institutional functions and purposes, and is adversely and directly harmed by the illegal and unconstitutional actions of the Defendants as alleged herein. CCDL has diverted, and

continues to divert, significant time, money, effort, and resources to addressing the Defendants' unconstitutional enforcement of the laws complained of herein that would otherwise be used for educational outreach, public relations, and/or programmatic purposes.

54.    Among other diversions and threatened diversions, the Defendants' unconstitutional enforcement of the laws complained of herein has forced, or likely will force, CCDL to divert previously allocated funds, energies, and resources to the cause of this legal action. Rather than working on other educational, outreach, public relations, and/or programmatic events and operations, CCDL's officers and Executive Board members have devoted, are continuing to devote, or are likely to devote, significant time, money, effort, and resources to addressing the Defendants' unconstitutional enforcement of the laws complained of herein. CCDL, its officers, and its Executive Board members will be forced to continue diverting such time, money, effort, and resources from CCDL's normal educational, outreach, public relations, and/or programmatic events and operations so long as the Defendants' unconstitutional enforcement of the laws complained of herein persists.

55.    As to CCDL's representative capacity claims, there are common questions of law that substantially affect the rights, duties and liabilities of many of CCDL's members as well as potentially numerous similarly situated residents whose constitutional rights have been, and are continuing to be, infringed by the Defendants' unconstitutional enforcement of the laws complained of herein. The interests CCDL seeks to protect are germane to its purpose.

56.    Each of the individual Plaintiffs to this action – as described in the preceding paragraphs, are all members and supporters of CCDL.

*Plaintiff Second Amendment Foundation, Inc.*

57.    Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit educational foundation incorporated under the laws of the State of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through educational and legal action programs. SAF has over 720,000 members and supporters nationwide, including many members in Connecticut.

58.    The purpose of SAF includes education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms under the Second Amendment, and the consequences of gun control. The Court's interpretation of the Second Amendment directly impacts SAF's organizational interests, as well as SAF's members and supporters in Connecticut aged 18-20, who enjoy exercising their Second Amendment rights. SAF brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. Many of SAF's individual Connecticut members have been adversely and directly harmed and injured by Defendants' enforcement of the laws complained of herein.

59.    The interests SAF seeks to protect are germane to its purpose. Indeed, the Connecticut statutes challenged herein have denied, and will continue to deny responsible, peaceable, law-abiding adults their fundamental, individual right to keep and bear arms enshrined under the Second and Fourteenth Amendments of the U.S. Constitution. Defendants' actions and failures alleged herein have caused SAF to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public, including by and through this action. Each of

the individual Plaintiffs to this action – as described in the preceding paragraphs – are members and supporters of SAF.

### Defendant Pamela Jo Bondi

60.     The Defendant, Pamela Jo Bondi, as Attorney General of the United States is sued in her official capacity. In her role as Attorney General, Bondi is directly responsible for enforcing federal firearms laws.

61.     Bondi and her subordinates individually and collectively act to enforce the federal firearms laws complained of herein.

### Defendant Ronnell Higgins

62.     The Defendant, Ronnell Higgins ("Higgins"), is the Commissioner of Connecticut's Department of Emergency Services and Public Protection ("DESPP"), and he is sued in his official capacity. In his role as the Commissioner, Higgins oversees the Connecticut State Police, which is responsible for investigating and initiating prosecutions under Connecticut law. *See* Conn. Gen. Stat. § 29-7. Additionally, DESPP possesses significant regulatory and administrative authority over Connecticut's pistol permitting system. *See, e.g.,* Conn. Gen. Stat. § 29-28.

63.     Additionally, in his role as Commissioner, Higgins exercises sole and exclusive authority over whether or not to issue Handgun Eligibility Certificates to Connecticut residents. Conn. Gen. Stat. § 29-36f.

### Defendant Margaret E. Kelley

64.     The Defendant, Margaret E. Kelley ("Kelley"), is Connecticut's State's Attorney for the Ansonia/Milford Judicial District and is sued in her official capacity. As a Connecticut

State's Attorney, she is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). Her responsibilities and authority include prosecuting individuals who violate the Connecticut laws complained of herein.

### Defendant Paul J. Narducci

65.    The Defendant, Paul J. Narducci ("Narducci"), is Connecticut's State's Attorney for the New London Judicial District and is sued in his official capacity. As a Connecticut State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court in which the court may proceed." Conn. Gen. Stat. § 51-286(a). His responsibilities and authority include prosecuting individuals who violate the Connecticut laws complained of herein.

### Defendant John Bucherati

66.    The Defendant, John Bucherati ("Bucherati") is the Police Chief for the Town of Seymour and is sued in his official capacity. As the police chief of Seymour, Bucherati is responsible for approving or denying applications for Connecticut Temporary State Pistol permits in his town. Bucherati enforces the Connecticut laws that prohibit the granting of a Temporary State Pistol Permit to anyone between the ages of 18 and 20.

67.    As part of the Seymour application package for a Temporary State Pistol Permit, Bucherati supplies a list of firearms prohibitors issued by the Connecticut State Police to applicants to show who is eligible. It reads in relevant part: "No person may obtain a Pistol

Permit, Eligibility Certificate, or possess any handguns if they are less than 21 years of age….”

**Exhibit C – Seymour Pistol Permit Application Package, p. 6.**

*Defendant Patrick Daley*

68.     The Defendant, Patrick Daley (“Daley”) is the Police Chief for the City of Norwich and is sued in his official capacity. As the Police Chief of Norwich, Daley is responsible for approving or denying applications for Temporary State Pistol Permits in his city. Daley enforces the Connecticut laws that prohibit the granting of a Temporary State Pistol Permit to anyone between the ages of 18 and 20.

## FACTUAL ALLEGATIONS

*Connecticut Firearms Laws And Connecticut Policy
Impacting Adults Under the Age Of 21*

**Connecticut Law Prohibits 18 to 20-Year-Old Adults from Obtaining an Eligibility
Certificate to Purchase and Keep a Handgun, Even for Home Defense.**

69.     To lawfully receive any handgun via transfer in Connecticut, the recipient must first possess either a state-issued Handgun Eligibility Certificate or a State Pistol Permit.

70.     A Handgun Eligibility Certificate allows law-abiding citizens in Connecticut who are 21 years of age or older to purchase a handgun for home defense. The certificate does not allow the holder to carry a loaded handgun in public for personal protection. Conn. Gen. Stat. § 29-36f.

71.     Conn. Gen. Stat. § 29-36f establishes the eligibility requirement that applicants must be 21 years of age or older. Conn. Gen. Stat. § 29-36f(a).

72.    As a result, 18 to 20-year-olds are expressly prohibited from obtaining, or even applying for, the Handgun Eligibility Certificate that would allow them to begin to undertake the process of obtaining a handgun to keep in their homes for self-defense.

### Connecticut's Two-Step Pistol Permitting Scheme Prevents 18 to 20 Year Old Adults from Acquiring and/or Carrying a Handgun

73.    Conn. Gen. Stat. § 29-28(b) establishes a two-step system for the issuance of Pistol Permits.

    a.    First, a person must apply to their town's chief of police, chief town executive official, or resident state trooper for a Temporary State Pistol Permit.

    b.    Once a person receives that Temporary State Pistol Permit from their local municipality, they must then apply to Defendant Higgins at the Connecticut State Police for a State Pistol Permit within sixty days of receiving the Temporary State Pistol Permit.

74.    Conn. Gen. Stat. § 29-33(b) prohibits any person from purchasing or receiving any handgun:

> unless such person holds a valid permit to carry a pistol or revolver issued pursuant to subsection (b) of section 29-28, a valid permit to sell firearms at retail issued pursuant to subsection (a) of section 29-28 or a valid eligibility certificate for a pistol or revolver issued pursuant to section 29-36f or is a federal marshal, parole officer or peace officer.

75.    A violation of Conn. Gen. Stat. § 29-33(b) is a class C felony that carries a two-year mandatory minimum sentence of incarceration and a $5,000 fine. Conn. Gen. Stat. § 29-33(j).

76.    Conn. Gen. Stat. § 29-35(a) prohibits any person from carrying a pistol or revolver – except when the person is within his house, on land leased or owned by him, or in his place of business – when the person does not hold a valid State Pistol Permit. No other Connecticut certificate or permit allows a person to carry a functional handgun in public for self-defense.

77.    A violation of Conn. Gen. Stat. § 29-35(a) is a class D felony that carries a one-year mandatory minimum sentence of incarceration – absent a finding of mitigating circumstances – and the forfeiture of the firearm at issue. Conn. Gen. Stat. § 29-37(b).

78.    Due to their age, the Plaintiffs are prohibited from applying to receive a State Pistol Permit.

79.    Conn. Gen. Stat. § 29-28(b) provides in relevant part: "No state or temporary state permit to carry a pistol or revolver shall be issued under this subsection if the applicant… (10) is less than twenty-one years of age."

80.    Thus, Connecticut law expressly prohibits otherwise qualified, law-abiding 18 to 20-year-old adults, including the Plaintiffs, from obtaining the only Connecticut permit that would allow them to lawfully carry functional handguns in public for self-defense.

**Notwithstanding Plaintiffs' Inability to Apply for Relevant Certificates or Permits, Connecticut's Transfer Ban Prevents 18 to 20 Year Olds' Lawful Handgun Acquisition.**

81.    Even if the Plaintiffs were able to apply for and obtain a State Pistol Permit necessary to acquire (and carry) a handgun, Connecticut's total ban on the transfer of pistols and revolvers to adult citizens under 21 years old, entirely forecloses the Plaintiffs from lawfully acquiring a handgun, much less carrying one in public for self-defense.

82.     Conn. Gen. Stat. § 29-34(b) categorically prohibits anyone under the age of 21 from obtaining a pistol or revolver except in one narrow circumstance inapplicable to self-defense:

> No person shall sell, barter, hire, lend, give, deliver or otherwise transfer to any person under the age of twenty-one years any pistol or revolver, except that a pistol or revolver may be temporarily transferred to any person only for the use by such person in target shooting or on a firing or shooting range, provided such use is otherwise permitted by law and is under the immediate supervision of a person eligible to possess a pistol or revolver.

83.     A violation of Conn. Gen. Stat. § 29-34(b) is a class C felony that carries a two-year mandatory minimum sentence of incarceration and a $5,000 fine. Conn. Gen. Stat. § 29-34(b).

84.     These general prohibitions operate in conjunction with Connecticut's requirements for obtaining a Handgun Eligibility Certificate. Temporary State Pistol Permit, and State Pistol Permit, to completely bar Plaintiffs and all other otherwise qualified, law-abiding 18 to 20-year old adult citizens from acquiring, keeping, and carrying a functional handgun in public for self-defense.

**Connecticut's Mandate That All Private Party Firearm Transfers Go Through an FFL Further Prevents Any Lawful Acquisition of Handguns by 18 to 20-Year-Old Adults**.

85.     In the majority of other states, non-FFL individuals may legally transfer firearms to other non-FFL individuals without the transfer being conducted through an FFL. Such transfers are referred to as "private party transfers."

86.     In Connecticut, however, a policy and practice prohibiting private party transfers absent the involvement of an FFL has been enacted and is enforced by Defendant Higgins and his subordinates.

87.     This policy and practice prohibiting private party transfers furthers Connecticut's regulatory scheme to collectively bar law-abiding 18 to 20-year-old adults, including the Plaintiffs, from exercising their constitutional right to acquire, keep, and carry handguns for self-defense.

88.     Prior to the promulgation of Defendant Higgins' policy, private individuals could obtain the necessary paperwork from the Connecticut State Police, complete it, and request a transfer authorization number from Defendant Higgins and his subordinates. Defendant Higgins and his subordinates would then conduct a NICS check and issue a transfer authorization number approving the transfer of the firearm if no disqualifiers existed. Only then could the private parties and then transfer the firearm between themselves.

89.     Per Defendant Higgins' policy and practice, private individuals (i.e., individuals who are not FFLs) must apply in writing to the Connecticut State Police (Defendant Higgins's subordinates) for permission to transfer a firearm to another private individual. Conn. Gen. Stat. § 29-33(c).

90.     Connecticut law prohibits the Connecticut State Police from approving a handgun transfer between two private individuals unless and until the State Police "perform the national instant criminal background check (NICS) and make a reasonable effort to determine whether there is any reason that would prohibit such applicant from possessing a pistol or revolver…." Conn. Gen. Stat. § 29-33(c).

91.     Put succinctly, Conn. Gen. Stat. § 29-33(c) requires the Connecticut State Police to use the federally-administered National Instant Check System ("NICS") background check system to process requested handgun transfers between private individuals.

92.    Background check requests issued by the Connecticut State Police through the federal NICS system are processed by the Federal Bureau of Investigation ("FBI").

93.    If no disqualifying information is revealed about a prospective private party handgun purchaser upon running the NICS background check, the State Police issue "an authorization number" permitting the firearm transfer to proceed.

94.    However, Defendant Higgins took the position that federal law proscribes the use of the NICS background check system for the purpose of processing a private party transfer without the involvement of an FFL.

95.    On September 11, 2023, the Connecticut State Police addressed the conflict between federal and state law by simply announcing that it "will no longer facilitate the private sale of a firearm between two individuals." **Exhibit D – Connecticut State Police Webpage**. It explained the decision as follows:

> The State statute for a firearm sale requires a query of the FBI-NICS system, which is not authorized by the FBI unless an FFL is involved. In order to satisfy the state law and the federal regulation, every private citizen sale to another private person must be facilitated through an FFL.

*Id.*

96.    Therefore, per Defendant Higgins' policy, the background checks mandated by Connecticut law for private party transfers, as codified in Conn. Gen. Stat. § 29-33(c), cannot be conducted under federal law absent the involvement of an FFL, and any requests for such background checks will not be processed by the FBI.

97.    Thus, collectively, these state statutes (hereinafter, "the Connecticut handgun ban") and Defendant Higgins' 2023 policy of requiring all private party transfers be conducted

by an FFL, categorically ban any adult under the age of twenty-one in Connecticut from lawfully obtaining a handgun, keeping them, or bearing them for lawful purposes.

98.     Indeed, *even if* peaceable, non-prohibited 18-20 year old adults in Connecticut could receive a Handgun Eligibility Certificate, a Temporary State Pistol Permit, and/or a State Pistol Permit, and *even if* Connecticut's outright transfer ban for 18 to 20 year old adults pursuant to Conn. Gen. Stat. § 29-34(b) were enjoined, Conn. Gen. Stat. § 29-33(c) and Defendant Higgins' 2023 policy completely forecloses any possibility for 18 to 20 year old adults to lawfully acquire a handgun in Connecticut due to federal law as explained *infra*.

99.     Plaintiffs' Second Amendment rights guarantee them the right to acquire a handgun. Hard stop. It is no answer that the federal government forecloses one avenue of acquisition and the state of Connecticut forecloses all remaining avenues.

100.    While the state and federal Defendants may point fingers at each other, it is the interaction of the challenged state and federal laws, along with Defendant Higgins' policy, in untraversable combination, that unconstitutionally prevent the Plaintiffs from exercising their Second Amendment rights.

### *Federal Firearms Laws Impacting Adults Under the Age Of 21*

101.    Under federal law, no FFL is permitted to transfer a handgun to any person who is less than 21 years old. 18 U.S.C. § 922(b)(1) declares:

> It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver-- (1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age….

*See also* **Exhibit A – Minimum Age for Gun Sales and Transfers** (Handguns: Under federal law, FFLs may not sell, deliver or otherwise transfer a handgun or handgun ammunition to any person the transferor knows or has reasonable cause to believe is under the age of 21.").

102.    If an FFL violates this provision, they "shall be fined under this title, imprisoned not more than five years, or both." 18 U.S.C. §924(a)(l)(D).

103.    Notably, 18 U.S.C. § 922(b)(1) does *not* foreclose all avenues of acquisition of a handgun by an individual 18 to 20 years of age.

104.    Additional guidance from the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") confirms this information:

> An individual between 18 and 21 years of age may acquire a handgun from an unlicensed individual who resides in the same state, provided the person acquiring the handgun is not otherwise prohibited from receiving or possessing firearms under federal law. A federal firearms licensee may not, however, sell or deliver a firearm other than a shotgun or rifle to a person the licensee knows or has reasonable cause to believe is under 21 years of age.

> There may be state or local laws or regulations that govern this type of transaction. Contact the office of your State Attorney General for information on any such requirements.

**Exhibit B – ATF Q&A On Handgun Acquisition.**

105.    27 C.F.R. § 478.99(b)(1) similarly declares, in relevant part:

> A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or deliver (1) any firearm or ammunition to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 18 years of age, and, if the firearm, or ammunition, is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 21 years of age….

106.    Collectively, these federal statutes and regulations (hereinafter, "the federal handgun ban") categorically ban any adult under the age of twenty-one from purchasing or

receiving a handgun from an FFL, but allow such individuals to purchase or receive a handgun and ammunition by way of a private party transfer.

107.    The federal handgun ban, therefore, leaves open a but a tiny window of opportunity for 18 to 20 year old adults to lawfully acquire handguns – a window unconstitutionally slammed shut in Connecticut by the interaction of the federal handgun ban, the Connecticut handgun ban, and Defendant Higgins' policy.

### *Federal Regulations Pertaining to NICS Background Checks*

108.    28 C.F.R. § 25.6 describes who may access NICS and for what purposes. In the relevant part, the regulation states:

> (j) *Access to the NICS Index for purposes unrelated to NICS background checks required by the Brady Act.* Access to the NICS Index for purposes unrelated to NICS background checks pursuant to 18 U.S.C. 922(t) shall be limited to uses for the purposes of:
>
> (1) Providing information to Federal, state, tribal, or local criminal justice agencies in connection with the issuance of a firearm-related or explosives-related permit or license, including permits or licenses to possess, acquire, or transfer a firearm, or to carry a concealed firearm, or to import, manufacture, deal in, or purchase explosives;
>
> (2) Responding to an inquiry from the Bureau of Alcohol, Tobacco, Firearms, and Explosives in connection with a civil or criminal law enforcement activity relating to the Gun Control Act (18 U.S.C. Chapter 44) or the National Firearms Act (26 U.S.C. Chapter 53); or,
>
> (3) Disposing of firearms in the possession of a Federal, state, tribal, or local criminal justice agency.

(emphasis original).

### *The Second Amendment*

109.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

110.    The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *Heller*, 554 U.S. 570; *McDonald*, 561 U.S. 742; *Caetano v. Massachusetts*, 577 U.S. 1027 (2016); *Bruen*, 597 U.S. 1, 142 S. Ct. 2111.

111.    The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald*, 561 U.S. at 778.

112.    The Supreme Court has defined all of the Second Amendment's key terms. "The people" means, at a minimum, "all Americans" and "Arms" includes "all instruments that constitute bearable arms". *Heller*, 554 U.S. at 580–82,.

113.    "We turn to the phrases 'keep arms' and 'bear arms'.  Johnson defined 'keep' as, most relevantly, '[t]o retain; not to lose,', and '[t]o have in custody.' Johnson 1095.  Webster defined it as '[t]o hold; to retain in one's power or possession.' No party has apprised us of an idiomatic meaning of "keep Arms."  Thus, the most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons.'" *Heller*, 554 U.S. at 582.

114.    "[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). For this reason, the right to keep and bear arms includes the right to purchase them. And thus, laws that burden the ability to purchase arms burden Second

Amendment rights. *Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir. 2022), opinion vacated on reh'g, 47 F.4th 1124 (9th Cir. 2022).

115.    In *Bruen*, the Supreme Court held unconstitutional New York's "good cause" licensing requirement because a State may not condition the right to publicly carry handguns on a citizen's "special need for self-defense." *Bruen*, 142 S.Ct. at 2135 n.8.

116.    The "general right to public carry" cannot be restricted absent "exceptional circumstances." *Bruen*, 142 S. Ct. at 2156. This is because the Second Amendment "presumptively protects" carrying firearms. *Id.* at 2129.

117.    To determine whether a state's restriction is constitutional, *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129.

118.    It is the Defendants' burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127; *see also id.* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the Defendants fail to meet their burden, then the Defendants' restrictions must be enjoined.

119.    *Bruen* struck down as unconstitutional New York's "proper cause" requirement for issuance of a permit to carry a handgun in public. In doing so, *Bruen* explicitly rejected New York's attempt to justify its restriction as analogous to a historical "sensitive place" regulation. 142 S.Ct. at 2133-34. The Court explained that a state may not simply ban guns wherever

people may "congregate" or assemble. A rule that "expand[ed] the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." *Id.* at 2134. As the Court explained, "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Id.*

120.    "18-to-20-year-olds are, like other subsets of the American public, presumptively among "the people" to whom Second Amendment rights extend." *Lara v. Commr. Pennsylvania State Police*, 91 F.4th 122, 132 (3d Cir. 2024); "Ordinary, law-abiding 18 to 20-year-old Minnesotans are unambiguously members of the people." *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024) at 692, reh'g denied, *Worth v. Jacobson*, 2024 WL 3892865, (C.A.8 (Minn.), 2024). "[T]he Court concludes that law-abiding 18-to-20-year-olds are a part of "the people" referenced in the Second Amendment." *Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 748 (N.D. Tex. 2022), appeal dismissed sub nom. *Andrews v. McCraw*, No. 22-10898, 2022 WL 19730492 (5th Cir. Dec. 21, 2022); "We agree with Plaintiffs: the historical record shows that the Second Amendment protects young adults' right to keep and bear arms." *Jones v. Bonta*, 34 F.4th 704, 720 (9th Cir. 2022), opinion vacated on reh'g, 47 F.4th 1124 (9th Cir. 2022). "[T]he Constitution's text, structure, and history affirmatively prove that 18-yearolds are covered by the Second Amendment." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 440 (4th Cir. 2021), as amended (July 15, 2021), vacated as moot, 14 F.4th 322 (4th Cir. 2021).

121.    Since *Bruen*, a trial court recently found that the federal law restricting the sale of handguns to adults under 21 is unconstitutional. "In summary, because Plaintiffs' conduct – the purchase of handguns – "fall[s] [within] the Second Amendment's 'unqualified command' " and the challenged statutes and regulations are not "consistent with the Nation's historic tradition of firearm regulation," the Court FINDS 18 U.S.C. §§ 922(b)(1) and (c)(1) facially unconstitutional and as applied to Plaintiffs. Plaintiffs having demonstrated there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law, their Motion for Summary Judgment [ECF No. 28] is GRANTED. For the same reasons,", *Brown v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 704 F. Supp. 3d 687, 706 (N.D.W. Va. 2023), appeal pending, 4th Cir.

122.    The 5th Circuit also recently reversed a trial court, finding that the federal law restricting the sale of handguns to adults under 21 was unconstitutional. "In sum, 18 U.S.C. §§ 922(b)(1), (c)(1) and their attendant regulations are unconstitutional in light of our Nation's historic tradition of firearm regulation." *Reese v. Bureau of Alcohol*, 2025 U.S. App. LEXIS 2142, *36 (5th Cir. 2025).

123.    When examining a challenged law, the court must consider the relevant time period and the court must look to relevantly similar historical analogues that also explain the how and why and keep in mind that our forefathers would have never have accepted certain legislation.  Some legislation would have never been accepted and thus is off the table for consideration.  The Founding Fathers framed a limited government, and vastly expanded the right to keep and bear arms in America.  Laws of the time did not control people nor arms, but sought to, as today, punish criminal acts and only act in a prophylactic manner under very

limited circumstances.  So, there were laws prohibiting intoxicated carrying of arms and the temporary disarmament of those adjudicated to be insane and thus dangerous.  At the time of the Founding and in 1791, ordinary adults under 21 had all the rights of any other adult otherwise.

124.    The relevant time period to examine to determine if there are any relevantly similar analogues that limit Second Amendment rights in the same way is 1791.  See *Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122, 134 (3d Cir. 2024), cert. granted, judgment vacated sub nom. *Paris v. Lara*, No. 24-93, 2024 WL 4486348 (U.S. Oct. 15, 2024) (Footnotes omitted) ("the Second Amendment should be understood according to its public meaning in 1791."). See also, *United States v. Connelly*, --- F.4th ----, 2024 WL 3963874 at *9 (5th Cir. Aug. 28, 2024) ("Offering three laws passed scores of years post-Ratification (and a fourth passed nearly half a century beyond that) misses the mark by a wide margin.").  *See also* Mark Smith, *Attention Originalists: The Second Amendment Was Adopted In 1791, Not 1868*, 24 Harvard J.L. & Pub. Pol'y Per Curiam 31 (2022) ("No Supreme Court case has ever looked to 1868 as the principal period for determining the meaning of an individual right in the Bill of Rights. If periods after 1791 are consulted at all, it is only to confirm that subsequent authorities, generally very shortly after the Founding, remained consistent with the public understanding in 1791.").

125.    10 U.S.C. §505(a) allows adults age 18 to join the United States military, and to join at age 17 with parental consent.  See 10 U.S.C. §505(a) which reads-  (a) The Secretary concerned may accept original enlistments in the Regular Army, Regular Navy, Regular Air Force, Regular Marine Corps, Regular Space Force, or Regular Coast Guard, as the case may be, of qualified, effective, and able-bodied persons who are not less than seventeen years of

age nor more than forty-two years of age. However, no person under eighteen years of age may be originally enlisted without the written consent of his parent or guardian, if he has a parent or guardian entitled to his custody and control. Thus, adults under 21 may join the military.

126.    The Twenty-sixth Amendment to the United States Constitution provides, in pertinent part - The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age. Thus, adults under 21 can vote.

127.    *Bruen* further establishes several requirements to determine whether a historical regulation is sufficiently analogous. First, the relevant time period for the historical analogue must be the Founding, centering on 1791. *Bruen*, 142 S.Ct. at 2135-36. That is because "'[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.'" *Bruen*, 142 S.Ct. at 2136 (cleaned up). "20th century and late 19th century statutes and regulations "cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." Bruen, 142 S.Ct. at 2154 & n.28.

128.    Thus, restrictions on the right to keep and bear arms dating after the Civil War and after the adoption of the Fourteenth Amendment in 1868 may be confirmatory of earlier legislation but cannot be used alone to provide the appropriate historical analogue required by *Bruen*. Legislation, history and events following the Civil war can confirm but cannot limit, reduce or infringe upon the rights as understood in 1791. In other words, only those restrictions with roots at the time of the Founding are sufficiently "enduring" and "well-

established" to comport with the Second Amendment's "unqualified command." *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

129.    Second, the historical analogue must be "representative." Historical "outlier" requirements of a few jurisdictions or of the Territories are to be disregarded. *Bruen*, 142 S.Ct. at 2133, 2153, 2147 n.22 & 2156.  Courts should not "uphold every modern law that remotely resembles a historical analogue," because doing so "risk[s] endorsing outliers that our ancestors would never have accepted." *Drummond v. Robinson*, 9 f.4th 217 (3rd. Cir 2021),- individual self-defense is the central component of the Second Amendment right.

130.    Also, the historical analogue must be "relevantly similar," which is to say that it must burden ordinary, law-abiding citizens right to carry in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132.  *Bruen* thus held that the inquiry into whether a proper analogue exists is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era.  *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id.* (cleaned up). "[T]o the extent later history contradicts what the text says, the text controls." *Id.* at 2137. "Thus, 'postratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text.'" *Id.* (quoting *Heller v. District of Columbia*, 670 F.3d 1224, 1274, n.6 (Kavanaugh, J., dissenting)).

131.    Also, the historical analysis required by the Supreme Court is fundamentally a legal inquiry that examines legal history, which is appropriately presented in briefs. See *Bruen*,

142 S. Ct. at 2130 n.6 (noting that the historical inquiry presents "legal questions" that judges can address) (emphasis in original); *see also id.* at 2135 n.8 (rejecting the dissent's suggestion that further fact-finding was needed and holding that its ruling did not "depend on any of the factual issues raised by the dissent"). Accordingly, the required analysis does not require fact-finding by a court.

132.    The text of the Second Amendment, as authoritatively interpreted by the Supreme Court, indisputably covers possession (keep) and the wear, carry, and transport (bear) of firearms, including handguns by ordinary, law-abiding citizens.  The Government bears the burden to demonstrate that there is an enduring, well established, representative historical analogue to the restriction imposed by the government. And the historical analogue must be "relevantly similar" to the contemporary restriction imposed by the government, burdening the Second Amendment right in a similar manner and for similar reasons. Under this test established in Bruen, Defendants cannot meet their collective burden to justify their the prohibition on the purchase, acquisition, or possession of handguns for those who are the age of eighteen but under the age of twenty-one, nor can State Defendants meet their burden on the prohibition of those same plaintiffs from carrying a handgun in public for their self-defense. There is simply no historical analogue prohibiting adults under 21 from purchasing, acquiring, possessing, or carrying handguns nor of banning otherwise lawful commerce between firearm dealers and adults under 21.

## COUNT ONE – 42 U.S.C. § 1983 CLAIM FOR VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENT AGAINST ALL DEFENDANTS EXCEPT PAMELA JO BONDI

133.    Paragraphs 1 through 132 are hereby incorporated herein.

134. The Second Amendment guarantees an individual right to keep and bear arms.

135. The Second Amendment is incorporated into the Fourteenth Amendment, allowing Second Amendment violation claims to be brought against state and local actors. *McDonald*, 561 U.S. 742.

136. The Second Amendment's guarantee is especially true when it comes to handguns, which the Supreme Court explicitly recognized as "the quintessential self-defense weapon." *Heller*, 554 U.S. at 629.

137. The Second Amendment unequivocally guarantees an individual right to acquire, keep, and carry arms for self-defense and all other lawful purposes.

138. The Connecticut handgun ban and the Defendants' enforcement of it impermissibly infringes upon the right of all law-abiding individuals aged 18 to 20 to keep and bear arms by making it virtually impossible for them to lawfully acquire handguns and handgun ammunition.

139. American history and tradition confirm that all law-abiding adults, including those under the age of twenty-one, were members of "the people" who were understood to enjoy full Second Amendment rights in the Founding Era.

140. Over 200 colonial and Founding-era militia statutes throughout the seventeenth and eighteenth centuries not only permitted, but also *mandated* that persons aged eighteen to twenty acquire and keep arms to perform their duty to serve in the militia and otherwise protect their communities. *See generally* David Kopel & Joseph Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 495 (2019) (providing over 200 militia statutes).

141.    No colonial or Founding Era law restricted the right of law-abiding adults under the age of twenty-one to acquire or possess arms purely based on age.

142.    There is and never has been any constitutionally grounded basis for restricting the Second Amendment rights of law-abiding adults between the ages of eighteen and twenty.

143.    Thus, the statutory and regulatory provisions that comprise the Connecticut handgun ban are unconstitutional on their face and as-applied to the law-abiding Plaintiffs in this case.

## COUNT TWO – CLAIM FOR VIOLATION OF THE SECOND AMENDMENT AGAINST DEFENDANT PAMELA JO BONDI

144.    Paragraphs 1 through 132 are hereby incorporated herein.

145.    The Second Amendment guarantees an individual right to acquire, keep and bear arms.

146.    This is especially true when it comes to handguns, which the Supreme Court explicitly recognized as "the quintessential self-defense weapon." *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008).

147.    The federal handgun ban and Defendant Bondi's enforcement of it impermissibly infringes upon the right of all law-abiding adults aged 18 to 20, including the Plaintiffs to keep and bear arms by foreclosing the primary method of acquiring a handgun – commercial purchase – which results in a total a total ban on the ability to acquire handguns and handgun ammunition when enforced in combination with Connecticut state law.

148.    American history and tradition confirm that all peaceable law-abiding adults, including those under the age of twenty-one, were members of "the people" understood to enjoy full Second Amendment rights in the Founding Era.

149.    Over 200 colonial and Founding-era militia statutes throughout the seventeenth and eighteenth centuries not only permitted, but affirmatively mandated that persons aged eighteen to twenty acquire and keep arms. *See generally* David Kopel & Joseph Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 495 (2019) (providing over 200 militia statutes).

150.    No colonial or Founding Era law restricted the right of peaceable law-abiding adults under the age of twenty-one to acquire arms purely based on age.

151.    There is and never has been any constitutionally grounded basis for restricting the Second Amendment rights of peaceable law-abiding adults between the ages of eighteen and twenty.

152.    Thus, the statutory and regulatory provisions that comprise the federal handgun ban are unconstitutional on their face and as-applied to the Plaintiffs and other similarly situated Connecticut residents who are foreclosed from any other avenue to acquire a handgun by function of state law, policy and practice.

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs respectfully request the following relief:

A) A declaratory judgment that the provisions of Conn. Gen. Stat. § 29-28(b) Conn. Gen. Stat. § 29-34(b), Conn. Gen. Stat. § 29-34(b), and Conn. Gen. Stat. § 29-36f that operate to prohibit individuals between 18 years of age and 20 years of age from acquiring handguns and handgun ammunition are unconstitutional on their face and as applied to the Plaintiffs;

B) A permanent injunction enjoining all of the Defendants (except Defendant Bondi), their officers, agents, servants, employees, and all persons in active concert or participation with them and all who have notice of the injunction from enforcing the provisions of Conn. Gen. Stat. § 29-28(b), Conn. Gen. Stat. § 29-34(b), Conn. Gen. Stat. § 29-34(b), and Conn. Gen. Stat. § 29-36f that operate to prohibit individuals between 18 years of age and 20 years of age from acquiring handguns and handgun ammunition;

C) A declaratory judgment that the provisions of 18 U.S.C. § 922(b)(1), 18 U.S.C. §924(a)(l)(D), 18 U.S.C. § 922(c), 27 C.F.R. § 478.99(b)(1) that operate to prohibit individuals between 18 years of age and 20 years of age from acquiring handguns and handgun ammunition are unconstitutional on their face and as applied to the Plaintiffs;

D) A permanent injunction enjoining Defendant Bondi, her officers, agents, servants, employees, and all persons in active concert or participation with them and all who have notice of the injunction from enforcing the provisions of 18 U.S.C. § 922(b)(1), 18 U.S.C. §924(a)(l)(D), 18 U.S.C. § 922(c), 27 C.F.R. § 478.99(b)(1) that operate to prohibit individuals between 18 years of age and 20 years of age from acquiring handguns and handgun ammunition;

E) In the alternative only to the relief requested in paragraphs C and D *supra*, a declaratory judgment and a permanent injunction enjoining Defendant Bondi and her officers, agents, servants, employees, and all persons in active concert or participation with them and all who have notice of the injunction from prohibiting

the State of Connecticut and the Connecticut state police from using the National Instant Check System ("NICS") for private party handgun transfers to eligible persons 18 to 20 years of age; and enjoining the remaining Defendants and their officers, agents, servants, employees, and all persons in active concert or participation with them and all who have notice of the injunction, from declining to approve private party handgun transfers to eligible persons 18 to 20 years-old due to their age, or for any claimed lack of access to the NICS system;

F) Attorneys' fees;

G) Costs;

H) Any such further relief that the Court deems just and equitable.

Dated: May 18, 2025                    Respectfully submitted,

 //s//   *Doug Dubitsky*
Doug Dubitsky, Esq.
(ct21558)
LAW OFFICES OF DOUG DUBITSKY
P.O. Box 70
North Windham, CT 06256
Telephone: 860.808.8601
Facsimile: 866.477.1120
Email: doug@lawyer.com

 //s//   *Craig C. Fishbein*
Craig C. Fishbein, Esq.
(ct25142)
FISHBEIN LAW FIRM, LLC
100 South Main Street
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
Facsimile: 203.294.1396
E-mail: ccf@fishbeinlaw.com

_//s//  Cameron L. Atkinson_
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

_Attorneys for the Plaintiffs_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

<u>/s/ Cameron L. Atkinson</u>