## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZACHARY SUCCOW, ET AL | : | No. 3:25-cv-00250-SVN |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| PAMELA J. BONDI, ET AL | : | |
| *Defendants* | : | JUNE 13, 2025 |

### State Defendants' Memorandum of Law in Support of Their Motion to Dismiss

Like any other plaintiff, organizations can only sue in federal court if they meet the requirements of Article III. An organization cannot bring a civil rights lawsuit under 42 U.S.C. § 1983 in the Second Circuit unless it shows an injury—a personal stake in the dispute establishing standing. *N.Y. State Citizens Coal. for Child. v. Poole*, 922 F.3d 69, 74-75 (2d Cir. 2019). The Organization Plaintiffs, Connecticut Citizens Defense League, Inc. (CCDL) and Second Amendment Foundation, Inc. (SAF) do not have any personal stake in this dispute of Connecticut's age-restrictions on possessing and purchasing a handgun and so cannot demonstrate standing. Their theory of injury, having to allocate organizational resources to oppose a law, was conclusively foreclosed by Supreme Court precedent. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024). Their theory of associational standing is contrary to fifty years of Second Circuit precedent. *See Poole*, 922 F.3d at 74-75. There was no reason for these bystander organizations to be parties to the case at the outset of litigation, and there is no reason for them to continue as parties past the pleadings. The Court should dismiss the claims of CCDL and SAF now.

1

I. **Factual Allegations**

The two individual plaintiffs, Zachary Succow and Samuel Towne, claim to be injured by General Statutes §§ 29-28(b), 29-34(b), and 29-36f because they are under the age of 21 and wish to obtain for a license to carry handguns but are prohibited from doing so by these laws. CCDL and SAF claim that Succow and Towne are members of both organizations.

CCDL is a Second Amendment advocacy organization based in Connecticut, with "over 41,000 members and supporters nationwide." (Am. Compl., ECF No. 49, ¶ 52.) CCDL broadly asserts that, because of these laws, it "expended and diverted resources otherwise reserved for different institutional functions and purposes." (*Id.* ¶ 52.) It further alleges that, "[r]ather than working on other educational, outreach, public relations, and/or programmatic events and operations, CCDL's officers and Executive Board members have devoted, are continuing to devote, or are likely to devote, significant time, money, effort, and resources" to address the enforcement of the challenged laws." (*Id.*, ¶ 54.) CCDL also claims that the challenged laws have "forced, or likely will force" CCDL to divert other resources "to the cause of this legal action." (*Id.*) Additionally, CCDL states that "there are common questions of law that substantially affect the rights, duties and liabilities of many of CCDL's members as well as potentially numerous similarly situated residents," and that these interests are germane to its purpose.

SAF is a Second Amendment advocacy organization based in Washington, with "over 720,000 members and supporters nationwide, including many members in

Connecticut." (ECF No. 49, ¶ 57.) It is focused on "the constitutional right to privately own and possess firearms under the Second Amendment, and the consequences of gun control." (*Id.*, ¶ 58.) SAF similarly alleges, without particularity, that enforcement of the challenged statutes have caused it to reallocate resources "that would otherwise be available for other purposes" to be used in this lawsuit.

Plaintiffs challenge §§ 29-28(b), 29-34(b), and 29-36f under § 1983, claiming that the combined effect of these statutes violates their Second Amendment rights. They seek declaratory and injunctive relief enjoining Defendants from enforcing §§ 29-28(b), 29-34(b), and 29-36f as to the individual Plaintiffs, CCDL and SAF and all of their members, as well as other similarly situated members of the public. (ECF No. 49, pp. 34-36.)

## II. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of establishing standing as of the time [s]he brought th[e] lawsuit and maintaining it thereafter. [The plaintiff] must support each element of standing with the manner and degree of evidence required at the successive stages of the litigation." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citations and internal quotations omitted). "[A] plaintiff asserting standing must allege facts that affirmatively and plausibly suggest that it has standing to sue and courts need not credit a complaint's conclusory statements without reference to its factual context."

3

*Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (citation and quotation marks omitted).

## III. The Organization Plaintiffs Do Not Have Standing.

CCDL and SAF lack standing because (1) the harm they allege—a diversion of organization resources—is insufficient as a matter of law, and (2) they cannot, as a matter of law, bring a § 1983 claim. "For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *All. for Hippocratic Med.*, 602 U.S. at 379 (citation and quotation marks omitted). "The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" *Id.* (citation and quotation marks omitted). Thus, Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).

In addition to CCDL and SAF, there are two individual Plaintiffs in this matter. Assuming, without conceding, that those individuals have standing, the Organization Plaintiffs must establish standing independently of any individual

4

Plaintiff's standing. "[S]tanding is not dispensed in gross . . . ." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). "The presence of a plaintiff with valid standing does not . . . prevent a court from dismissing an organizational plaintiff where there is no clear basis for standing." *Conn. Citizens Def. League, Inc. v. Thody*, 664 F. Supp. 3d 235, 246 (D. Conn. 2023), aff'd *Conn. Citizens Def. League, Inc. v. Thody*, 2024 U.S. App. LEXIS 1056 (2d Cir. Jan. 17, 2024). "Organizations . . . may have standing in one of two ways: by establishing so-called 'associational' or 'representational' standing to sue on behalf of its members, or by establishing that it was directly injured as an organization." *Conn. Parents Union*, 8 F.4th at 172.

The Organization Plaintiffs fail to allege facts supporting either theory.

### A. The Organization Plaintiffs' standing theories are foreclosed by binding precedent.

The Organization Plaintiffs' diversion of resources to further its abstract social interest in Second Amendment and gun rights advocacy is insufficient to show an injury. "[O]rganizations may have standing to sue on their own behalf for injuries they have sustained. . . . In doing so, however, organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *All. for Hippocratic Med.*, 602 U.S. at 393-94 (citations and quotation marks omitted). "Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct . . . no matter how longstanding the interest and no matter how qualified the organization . . . . A plaintiff must show far more than simply a setback to the organization's abstract social interests." *Id.*, 394.

5

CCDL and SAF broadly seek to "preserve the effectiveness of the Second Amendment," (ECF No. 49, ¶¶ 52, 57), but do not describe how the challenged age-restrictions have caused them to divert resources away from that mission. The Organization Plaintiffs offer only the vague and conclusory assertion that they have "expended and diverted resources otherwise reserved for different institutional functions and purposes," (*Id.* ¶ 52), or dedicated resources "that would otherwise be available for other purposes" to this lawsuit. (*Id.*, ¶¶ 59.) These injuries are not enough to establish standing under any pleading standard. CCDL and SAF do not contend that the challenged laws could be enforced against them, let alone that such enforcement, even if it were possible, would infringe a Second Amendment right specific to either organization.

The Supreme Court has squarely rejected the "diversion of resources" theory. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *All. for Hippocratic Med.*, 602 U.S. at 394. If an organization had standing simply because it "diverts its resources in response to a defendant's actions," then "all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* at 395; *see also Conn. Parents Union*, 8 F.4th at 173-74 (allegation that organization expended resources to counteract illegal activity touching on its core mission, thereby diverting resources

away from other activities, was insufficient to establish injury in fact). Thus, organizations that are not directly regulated by the challenged law can only establish an injury by demonstrating "an *involuntary* material burden [to their] established core activities." *Id.* at 173. "[E]xpenditures or other activities, if incurred at the organization's own initiative, cannot support a finding of injury[.]" *Id.* at 174. Here, CCDL and SAF do not (and could not) allege that any of the challenged laws required them to expend or divert resources, or that their decision to do so was due to anything other than their own initiative.

    CCDL and SAF also allege that they were "forced" to "divert" resources away from other matters "to the cause of this legal action." (ECF No. 49, ¶¶ 45, 59.) To allege that there was a forced diversion of resources strains credulity here, where the Organization Plaintiffs each prominently advertised their Second Amendment litigation efforts.[1] But assuming the truth of that allegations, and even if this exact theory of standing had not been squarely rejected by the Supreme Court last year, Organization Plaintiffs' voluntary decision to divert resources towards litigation cannot establish standing to commence that litigation. That circular reasoning, where the act of filing a lawsuit creates standing, would make a mockery Article III.

---

[1] CCDL maintains a solicitation on its website requesting general donations to its "Litigation Fund." *See* https://www.ccdl.us/product-category/donate/ (last visited June 6, 2025). SAF similarly seeks donations in general support of its litigation efforts. See https://saf.org/individual/ (last visited June 6, 2025). SAF also maintains a "Plaintiff Search," on its website, which states "SAF frequently brings lawsuits on behalf of its individual members and donors. If you would like to be considered as a plaintiff in a new or pre-existing lawsuit, please fill out the form below. Be sure to indicate the issue that is affecting you that you want to challenge, for example: 'Maryland Assault Weapons Ban.'" *See* https://saf.org/plaintiff/ (last visited June 6, 2025).

CCDL has firsthand experience with a court rejecting allegations of injury like those it alleges here. In *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 447-48 (2d Cir. 2021), the Second Circuit rejected CCDL's "diversion of resources" theory as insufficient to establish standing to bring a Second Amendment challenge. There, the Second Circuit held that CCDL "fail[ed] to identify any 'current activities' from which it diverted resources in order to pursue those efforts, and it therefore fail[ed] to show 'that it was perceptibly impaired.'" *Id.*, 447 (citation and quotation marks omitted). The Court explained that the organization's communications with individuals about an allegedly unconstitutional policy, as well as letter-writing, lobbying, and pursuing litigation on that same issue, "were not a departure from CCDL's usual activities." *Id.*, 447. Furthermore, CCDL's allegation that it "has [expended and diverted] and continues[] to expend and divert its resources and has been and continues to be adversely and directly harmed by the Defendants' actions" was conclusory and did not establish a likelihood of future injury sufficient to support standing. *Id.*, 448.

Here, CCDL's allegations of past and present injury are even *less* detailed than the description rejected by the Second Circuit in *Lamont*. Similarly, its description of future injury is on par with the one rejected by that panel. Likewise, SAF's allegations are deficient for the same reason, and another court has also previously determined SAF lacked organizational standing. *See Hunter v. Cortland Hous. Auth.*, 2024 U.S. Dist. LEXIS 84218, at *13 (N.D.N.Y. May 9, 2024) (SAF effectively conceded that it lacked organizational standing). *Alliance for Hippocratic Medicine* disposes of the

8

Organization Plaintiff's "diversion of resources" theory, and there is no other fact that could establish a cognizable injury. The Organization Plaintiffs have not established Article III standing.

### B. The Second Circuit prohibits associational standing in § 1983 claims.

Just as the Organization Plaintiffs' theory of Article III standing is barred by precedent, so too is their theory of associational standing. Longstanding Second Circuit caselaw prohibits CCDL and SAF from invoking associational standing to bring civil rights claims like this one. *See N.Y. State Citizens Coal. for Child. v. Poole*, 922 F.3d 69, 74-75 (2d Cir. 2019) ("In a string of opinions, this Court has held that organizations suing under Section 1983 must, without relying on their members' injuries, assert that their own injuries are sufficient to satisfy Article III's standing requirements"); *see also Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973) ("Neither [the] language nor the history [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violations of rights of members."). "It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983, as we have 'interpret[ed] the rights [§ 1983] secures to be personal to those purportedly injured.'" *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (quoting *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984)).

That has been the rule of the Second Circuit since *Aguayo* was decided in 1973 and remains so despite the different approaches of the other circuits. *See Rodriguez v. Winski*, 444 F. Supp. 3d 488, 497 (S.D.N.Y. 2020) ("While acknowledging different

9

approaches adopted by other circuits, the Second Circuit recently reaffirmed this doctrine in *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 122-24 (2d Cir. 2017)"). Thus, this Court is bound by prior panels of the Second Circuit "until such time as [our prior decisions] are overruled either by an *en banc* panel of our Court or by the Supreme Court." *Nnebe*, 644 F.3d at 156 n.6 (citation and quotation marks omitted). No Supreme Court or an *en banc* Second Circuit panel has done so.

Nevertheless, CCDL has argued in other cases that the Second Circuit's prohibition on associational standing in § 1983 claims was implicitly overruled by the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023).[2] *See Thody*, 2024 U.S. App. LEXIS 1056, at *6 n.3. But *Students for Fair Admissions* was silent on this issue. And "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011). Neither the Second Circuit's precedent on associational standing, nor that of any other Circuit was at issue in *Students for Fair Admissions*.

Rather, *Students for Fair Admissions* concerned an organization's equal protection challenges to university admissions processes on behalf of its members. The Supreme Court's discussion of standing with respect to the equal protection

---

[2] The claims against the University of North Carolina were brought pursuant to 42 U.S.C. § 2000d and § 1983. *See Students for Fair Admissions, Inc. v. Univ. of N.C.*, 567 F.Supp.3d 580, 585-86 (M.D.N.C. 2021) rev'd by *Students for Fair Admissions*, 600 U.S. at 231.

10

challenge was limited to whether the plaintiff was a valid membership organization, *not* whether the plaintiff was barred from claiming associational standing under § 1983. *See Students for Fair Admissions*, 600 U.S. at 199-201. Any split between the Second Circuit and Fourth Circuit on this issue was not before the Supreme Court in *Students for Fair Admissions* and was not addressed.

There is no basis to conclude that the Supreme Court's decision silently overruled fifty years of Second Circuit precedent. Indeed, when recently confronted with the opportunity to overrule its prior cases in light of *Students for Fair Admissions*, the Second Circuit declined to do so. *Thody*, 2024 U.S. App. LEXIS 1056, at *6 n.3. Another court in the Second Circuit explicitly rejected any argument that Second Circuit, outright, and dismissed an organization attempting to claim associational standing in a Second Amendment challenge. *N.Y. State Rifle & Pistol Ass'n v. James*, 2025 U.S. Dist. LEXIS 28731, at *13-14 (N.D.N.Y. Feb. 18, 2025) ("[U]ntil such time as . . . prior decisions are overruled by an en banc panel of the Second Circuit or by the Supreme Court, this Court is bound by their holdings."); *see also Hunter*, 2024 U.S. Dist. LEXIS 84218, at *15 (following Second Circuit precedent and dismissing SAF's § 1983 claims).

Even assuming controlling precedent in this Circuit did not bar Organization Plaintiffs from asserting associational standing for a § 1983 claims, the allegations in the complaint do not satisfy the criteria for associational standings. "Associational standing carves only a narrow exception from the ordinary rule that a litigant 'must assert his own legal rights and interests, and cannot rest his claim to relief on the

11

legal rights or interests of third parties.'" *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004) quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). Where an organization sues on behalf of its members, it must demonstrate "that (a) at least one of the association's members would otherwise have standing to sue in its own right—i.e., has constitutional standing; (b) the interests the association seeks to protect are germane to its purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *All. for Open Soc'y Int'l, Inc. v. United States Agency for Int'l Dev.*, 651 F.3d 218, 228 (2d Cir. 2011) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977).

At the very least, CCDL and SAF's claims of associational standing fail on the second prong, which requires the interests the organization seeks to protect are germane to its purposes. The allegations in the complaint are too conclusory and vague to determine how the interests of the two individual plaintiffs, who are members but do not purport to speak for CCDL or SAF, are germane to the purposes of each organization, which has thousands of members throughout the country. CCDL and SAF allege a generalized opposition to age restrictions on carry permits for people under age 21 that is no different from any member of the general public who might disagree with the law. And a general opposition to a statute is not enough to establish standing to challenge it because "a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." *All. for Hippocratic Med.*, 602 U.S. at 381. A belief that enforcement

12

of the age restrictions is illegal, which is the only basis for CCDL's and SAF's claims of associational standing, puts CCDL and SAF on the same footing as any non-member individual who may share similar opinions about the Second Amendment and the challenged laws.

These organizations must show something more that would distinguish them from the public, at large, or else every firearms law could be challenged based only on an organization's belief that the law is illegal. The Court should not credit CCDL and SAF's conclusory allegations. *See Conn. Parents Union*, 8 F.4th at 172. Construing associational standing so broadly improperly erodes the gatekeeping purposes of Article III standing which is meant to screen out "plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *All. for Hippocratic Med.*, 602 U.S. at 381. The Organization Plaintiffs' generalized opposition to age restrictions are not enough to support associational standing here.

## Conclusion

For the foregoing reasons, CCDL and SAF should be dismissed from this case.

        STATE DEFENDANTS,

        RONNELL HIGGINS, MARGARET A.
        KELLEY AND PAUL J. NARDUCCI

BY:   */s/Blake T. Sullivan*
      Blake T. Sullivan (ct30289)
      Timothy J. Holzman (ct30420)
      James M. Belforti (ct30449)
      Assistant Attorney General
      Office of the Attorney General
      165 Capitol Avenue, 5th Floor

Tel.: (860) 808-5020  
Fax: (860) 808-5347  
Blake.Sullivan@ct.gov  
Timothy.Holzman@ct.gov  
James.Belforti@ct.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

>  */s/Blake T. Sullivan*
>  Blake T. Sullivan
>  Assistant Attorney General