UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZACHARY SUCCOW et al., | : | No.:  3:25cv250 (SVN) |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PAMELA JO BONDI et al., | : | |
|     Defendants. | : | June 13, 2025 |

**FEDERAL DEFENDANT'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Local Civil Rule 7(a)(1), the federal defendant, Attorney General Pamela Jo Bondi, respectfully submits this memorandum in support of her motion to dismiss the amended complaint.  Specifically, the plaintiffs that this brief refers to as "the entity plaintiffs" – Connecticut Citizens Defense League, Inc., and Second Amendment Foundation, Inc. – lack standing to prosecute their claims in this case.  Moreover, all of the amended complaint's claims against the federal government are barred by res judicata because the individual plaintiffs are members of the class in <u>Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives</u>, Case No. 22-cv-410 (E.D. Va.), which case already has rendered judgment in their favor on the same issue raised in this case, and the entity plaintiffs are in privity with the individual plaintiffs and the <u>Fraser</u> class for purposes of preclusion.

**I.      Procedural History**

On May 18, 2025, the plaintiffs – two individuals and two advocacy groups – filed the operative amended complaint in this case.  (ECF 49.)  As it pertains to the federal defendant, the amended complaint alleges that federal law prohibiting the transfer

of a handgun by a Federal Firearms Licensee to an individual between 18 and 20 years old violates the Second Amendment to the United States Constitution. (See Am. Compl., ECF 49, at ¶¶144-52.) The amended complaint seeks a "declaratory judgment that the provisions of 18 U.S.C. § 922(b)(1), 18 U.S.C. § 924(a)(1)(D), 18 U.S.C. § 922(c), 27 C.F.R. § 478.99(b)(1) that operate to prohibit individuals between 18 years of age and 20 years of age from acquiring handguns and handgun ammunition are unconstitutional" facially and as applied, as well as a permanent injunction enjoining enforcement of the same provisions. (ECF 49, at 35.)

## II.     Legal Framework

The Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921-931, establishes a comprehensive federal regulatory scheme governing the manufacture and distribution of firearms and ammunition. Congress's "principal purpose" in enacting this legislation was to "curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" Huddleston v. United States, 415 U.S. 814, 824 (1974) (quoting S. Rep. No. 1501 at 22 (1968)). The Gun Control Act thus prohibits, among other things, certain categories of persons from receiving or possessing firearms or ammunition in or affecting interstate or foreign commerce. 18 U.S.C. § 922(g). Among the prohibited categories are certain felons, persons who have been adjudicated as "mental defectives," non-citizens who are present in the country unlawfully, and persons who have been convicted of certain domestic violence crimes. Id. § 922(g)(1), (4), (5), (9). These provisions are paired with a prohibition on the transfer of firearms to certain classes of prohibited persons. Id.

§ 922(d). The Gun Control Act also prohibits FFLs from transferring firearms or ammunition to individuals under the age of eighteen. Id. § 922(b)(1). It further prohibits FFLs from transferring firearms and ammunition other than shotguns, rifles, and ammunition for shotguns and rifles to individuals under the age of twenty-one. Id.

### III. Argument

#### A. The Entity Plaintiffs Lack Standing

As an initial matter, the entity plaintiffs lack standing to prosecute their claims against the federal government, and their claims should be dismissed for that reason.

"The district courts of the United States, as we have said many times, are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Article III, Section 2 of the United States Constitution limits the federal judicial power to "cases" and "controversies." U.S. CONST. art. III, § 2; see also Raines v. Byrd, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). It is axiomatic that federal courts must dismiss actions where subject-matter jurisdiction is absent. See Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011). "[T]he plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002).

"To satisfy the Constitution's case-or-controversy requirement, a plaintiff in federal court must establish that they have standing to sue." Lacewell v. Off. of

Comptroller of Currency, 999 F.3d 130, 141 (2d Cir. 2021) (internal quotation marks omitted). "The requirements of Article III standing are well established: [A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id.; see also United States v. Williams, 475 F.3d 468, 478-79 (2d Cir. 2007) ("a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision" (internal quotation marks omitted)). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." Peck v. Baldwinsville Cent. Sch. Dist., 351 F. App'x 477, 479 (2d Cir. 2009) (internal quotation marks omitted). "Where, as here, Plaintiff is an entity, standing may be established either (i) directly, based on an injury to the entity itself, i.e. organizational standing, or (ii) in the organization's representative capacity, based on the injuries to its members, i.e. associational standing." Pen Am. Ctr., Inc. v. Trump, 448 F. Supp. 3d 309, 319 (S.D.N.Y. 2020) (citing Warth v. Seldin, 422 U.S. 490, 511 (1975)).

       1.      Organizational Standing

As to organizational standing, "an organization can have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. . . . Under this theory of 'organizational' standing, the organization is just another person—albeit a legal person—seeking to vindicate a right. To qualify, the organization itself must meet the same standing test that

applies to individuals." New York C.L. Union v. New York City Transit Auth., 684 F.3d 286, 294 (2d Cir. 2012) (cleaned up).

For the same reasons set forth in the state defendants' memorandum in support of their motion to dismiss, the entity plaintiffs lack standing to prosecute these claims on their own behalf. (ECF 52-1, at 5-9.) For the sake of brevity, the federal defendant will not repeat those arguments at length in this brief. But put simply, the entity plaintiffs' allegations of direct harm – which are premised on a theory of diversion of their resources – simply are insufficient under Supreme Court and Second Circuit precedent, and their direct claims therefore should be dismissed.

As for the entity plaintiffs' own harms, they allege essentially the following:

- "CCDL has expended and diverted resources otherwise reserved for different institutional functions and purposes, and is adversely and directly harmed by the illegal and unconstitutional actions of the Defendants as alleged herein. CCDL has diverted, and continues to divert, significant time, money, effort, and resources to addressing the Defendants' unconstitutional enforcement of the laws complained of herein that would otherwise be used for educational outreach, public relations, and/or programmatic purposes." (ECF 49, at ¶53.)

- Specifically, according to the plaintiffs, "the Defendants' unconstitutional enforcement of the laws complained of herein has forced, or likely will force, CCDL to divert previously allocated funds, energies, and resources to the cause of this legal action. Rather than working on other educational, outreach, public relations, and/or programmatic events and operations, CCDL's officers and Executive Board members

have devoted, are continuing to devote, or are likely to devote, significant time, money, effort, and resources to addressing the Defendants' unconstitutional enforcement of the laws complained of herein." (Id., at ¶54.)

- "Defendants' actions and failures alleged herein have caused SAF to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public, including by and through this action." (Id., at ¶59.)

In other words, the entity plaintiffs organizational standing claim relies exclusively on a diversion-of-resources theory of harm. But that theory of standing recently was rejected by the Supreme Court when addressing familiar-sounding arguments:

> The medical associations say that they have demonstrated something more here. They claim to have standing not based on their mere disagreement with FDA's policies, but based on their incurring costs to oppose FDA's actions. They say that FDA has "caused" the associations to conduct their own studies on mifepristone so that the associations can better inform their members and the public about mifepristone's risks. . . . They contend that FDA has "forced" the associations to "expend considerable time, energy, and resources" drafting citizen petitions to FDA, as well as engaging in public advocacy and public education. . . . And all of that has caused the associations to spend "considerable resources" to the detriment of other spending priorities.

Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 394 (2024) (citations omitted).

A unanimous Supreme Court was not persuaded, concluding that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its

6

way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." Id.; see also Connecticut Parents Union v. Russell-Tucker, 8 F.4th 167, 174 (2d Cir. 2021) ("expenditures or other activities, if incurred at the organization's own initiative, cannot support a finding of injury").

The arguments that the Supreme Court rejected in Alliance are nearly the exact same standing arguments the entity plaintiffs offer here; the amended complaint describes the entities being "forced" to make what are ultimately voluntary expenditures and further claims asserts that those voluntary expenditures were "caused" by Government policy with which the entity plaintiffs disagree. That, they say, requires that they move resources from some other part of their mission to this one. But those arguments are precisely the arguments rejected in Alliance, and the entity plaintiffs therefore lack organizational standing.

2. Associational Standing

As to associational standing, "when an association sues on behalf of its members, it must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 362 (2d Cir. 2016) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)). "The third of those requirements is only a prudential one — that is, it is not an element of Article III's jurisdictional limitations on

the power of the federal courts." New York v. United States Dep't of Com., 351 F. Supp. 3d 502, 605 (S.D.N.Y.), aff'd in part, rev'd in part and remanded sub nom. Dep't of Com. v. New York, 588 U.S. 752, 139 S. Ct. 2551, 204 L. Ed. 2d 978 (2019). "'Hence the third prong of the associational standing test is best seen as focusing on . . . matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution.'" S. Lyme Prop. Owners Ass'n., Inc. v. Town of Old Lyme, 539 F. Supp. 2d 524, 533 (D. Conn. 2008) (quoting United Food and Commercial Workers Union Local 751 v. Brown Group, 517 U.S. 544, 553 (1996)).

In this case, it is that third prudential requirement that is lacking. As will be discussed below, the individual plaintiffs' claims against the federal government are barred by res judicata. And while res judicata is not jurisdictional in and of itself (such that the first requirement of associational standing does not appear to be implicated); see Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter"); the principles underlying res judicata – "avoiding the [defendant's] burdens of twice defending a suit . . . [and] the avoidance of unnecessary judicial waste"; Arizona v. California, 530 U.S. 392, 412, 120 S. Ct. 2304, 2318, 147 L. Ed. 2d 374, supplemented, 531 U.S. 1, 121 S. Ct. 292, 148 L. Ed. 2d 1 (2000); substantially overlap with those at issue in the third associational standing requirement.

Specifically, this is a case where both named individual plaintiffs (and nearly any possible plaintiff, given the broad scope of the relevant class) have obtained a final judgment in their favor on the precise issue that the entity plaintiffs raise in this case. In

other words, it is not clear whether the entity plaintiffs have <u>any</u> members on whose behalf they could bring this case that have not otherwise already prevailed due to their membership in the <u>Fraser</u> class. As a result, judicial and party convenience, as well as efficiency, strongly weigh against a determination that the entity plaintiffs to bring this action in a representative capacity.

      B.      <u>All Plaintiffs' Claims are Barred by Res Judicata</u>

In the event that the court concludes that the entity plaintiffs have standing, and as an initial matter with respect to the individual plaintiffs, the claims of all of the plaintiffs in this case are barred by res judicata.

"The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" <u>United States v. Envicon Dev. Corp.</u>, 153 F. Supp. 2d 114, 123 (D. Conn. 2001) (quoting <u>Monahan v. N.Y. City Dep't of Corrs.</u>, 214 F.3d 275, 284 (2d Cir. 2000). In the Second Circuit, "any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine [of] res judicata." <u>Sure–Snap Corp. v. State Street Bank and Trust Co.</u>, 948 F.2d 869, 873 (2d Cir. 1991). "To determine whether the doctrine of res judicata bars a subsequent action, we consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." <u>Corbett v. MacDonald Moving Servs., Inc.</u>, 124 F.3d 82, 87-88 (2d Cir. 1997).

In this case, the judgment in favor of the plaintiffs in <u>Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives</u>, Case No. 22-cv-410 (E.D. Va.), bars relitigation of the same claim here. All four requirements for the applicability of res judicata are met, and the individual plaintiffs' claims should be dismissed.

<u>First</u>, there was a final judgment on the merits in <u>Fraser</u>. Specifically, on August 31, 2023, the district court in that case rendered final judgment on the merits (ECF 83) consistent with a final order of injunction (ECF 81) enjoining certain federal defendants – including the federal defendant in this case – from enforcing, among other things, 18 U.S.C. § 922(b)(1), (c), and 27 C.F.R. § 478.99(b)(1), "in any manner that obstructs, hinders, prohibits, frustrates, bars, or prevents the Plaintiffs and members of the Class from purchasing handguns or ammunition from federally licensed firearms dealers due to their age." (<u>Id.</u> ECF 81, at 2.)

The district court stayed effectuation of the judgment pending appeal, the federal government did appeal, and that appeal is pending before the United States Court of Appeals for the Fourth Circuit, where it was argued on January 30, 2025. But the pendency of the appeal does not change the res judicata analysis because "in the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed— detract from its decisiveness and finality." <u>Huron Holding Corp. v. Lincoln Mine Operating Co.</u>, 312 U.S. 183, 189 (1941); see also <u>United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,</u> 905 F.2d 610, 621 (2d Cir. 1990) ("the pendency of a criminal appeal . . . generally does not deprive a

10

judgment of its preclusive effect"); see also Straus v. Am. Publishers' Ass'n, 201 F. 306, 310 (2d Cir. 1912) ("The point is also made that the judgment was not res adjudicata because of the appeal pending to the United States Supreme Court. This fact does not suspend the operation of the judgment as an estoppel."); Wright & Miller, Federal Practice and Procedure, 18A Fed. Prac. & Proc. Juris. § 4433 (3d ed.) ("The Supreme Court long ago seemed to establish the rule that a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo. . . . The lower courts have taken the rule as settled ever since" (footnote omitted)).

Second, there can be no reasonable argument that the United States District Court for the Eastern District of Virginia is not a court of competent jurisdiction as to the federal constitutional question posed in that case.

Third, the judgment in Fraser was in a case involving the same parties or their privies. That is because either the individual plaintiffs in this case were literally parties to Fraser in light of their membership in the certified class in that case or because this case presents a situation in which nonparty preclusion applies.

As to the former, on August 30, 2023, the district court in Fraser certified a nationwide class – with regional carveouts not relevant here – pursuant to Federal Rule of Civil Procedure 23(b)(2) that includes the individual plaintiffs in this case. (See id. ECF 78.) At the time the judgment was rendered, therefore, the individual plaintiffs were parties to the Fraser litigation. See, e.g., Duprey v. Connecticut Dep't of Motor Vehicles,

11

191 F.R.D. 329, 340 n.7 (D. Conn. 2000) ("the judgment in a class action under subdivision (b)(2) includes all those whom the Court finds to be members of the class").

In the alternative, this situation is one in which nonparty preclusion is appropriate. "As a general rule, 'a litigant is not bound by a judgment to which she was not a party' because a nonparty 'generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit.'" Yan Won Liao v. Holder, 691 F. Supp. 2d 344, 352–53 (E.D.N.Y. 2010) (quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008)). But Taylor recognizes multiple exceptions to that general rule, one of which is that "a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit." Taylor, 553 U.S. at 895 (cleaned up). "Representative suits with preclusive effect on nonparties include properly conducted class actions . . . ." Id. The Court went on to note that nonparty representation is adequate "[i]n the class-action context" consistent with "the procedural safeguards contained in Federal Rule of Civil Procedure 23." Id. at 900.

That is because "[a]s a member of a class certified under Fed. R. Civ. P. 23(b)(2), plaintiff was not entitled to opt out of the class, and is bound by judgments in the case. . . . A class member may not pursue a separate action that involves the same subject matter against the same defendant during the pendency of the case . . . and is barred by res judicata after its disposition." Robinson v. Long Island R. Co., No. 85 C 456, 1989 WL 140593, at *1 (E.D.N.Y. Nov. 15, 1989); see also Cooper v. Fed. Rsrv. Bank of Richmond, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under

elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.").

Nonparty preclusion applies with equal force to the entity plaintiffs, who are in privity with the individual plaintiffs whose claims are barred by res judicata. "It is well settled in this circuit that literal privity is not a requirement for res judicata to apply." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000). "Instead, a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation.'" Id. (quoting Alpert's Newspaper Delivery, Inc. v. The New York Times Co., 876 F.2d 266, 270 (2d Cir.1989)). "As a result, courts have found privity to exist in relationships such as: trustee and beneficiary; buyer and seller; fiduciary; agent; and cases where the parties represent the interests of the same person, such as in familial relationships." Yan Won Liao v. Holder, 691 F. Supp. 2d 344, 354 (E.D.N.Y. 2010).

The same principle should apply here, where the entity plaintiffs' interests on this issue were "adequately represented" by their members, which members themselves were represented by a class certified pursuant to Federal Rule of Civil Procedure 23(b)(2). In light of that representation, the adequacy of such is a precondition to class certification, the Fraser class, the individual plaintiffs in this case, and the entity plaintiffs here are in privity for purposes of preclusion.

Fourth, the causes of action in question are the same. In Fraser, the plaintiffs brought a challenge under the Second Amendment to federal firearm restrictions on the transfer of handguns to those between the ages of eighteen and twenty. (See Fraser, 22-

13

cv-410 (E.D. Va.), ECF 74, at 13-14.)  The plaintiffs prevailed on that claim.  (<u>See</u> <u>id.</u>, ECF 81, at 1.)  The plaintiffs in this case bring a challenge under the Second Amendment to the same federal firearm restrictions.  (<u>See</u> ECF 49, at ¶¶144-52.)

In sum, all the requirements of res judicata are met here, and the plaintiffs are not entitled to relitigate a claim on which they prevailed in <u>Fraser</u>.  The amended complaint should be dismissed.

### IV.    <u>Conclusion</u>

For the foregoing reasons, the federal defendant respectfully urges the court to dismiss the amended complaint against her.

David X. Sullivan
United States Attorney

  /s/                         
John W. Larson (ct28797)
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
T:  (860) 947-1101
F:  (860) 760-7979
john.larson@usdoj.gov
