UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZACHARY SUCCOW et al., | : | No.: 3:25cv250 (SVN) |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PAMELA JO BONDI et al., | : | |
|     Defendants. | : | October 24, 2025 |

**FEDERAL DEFENDANT'S MEMORANDUM IN
SUPPORT OF SECOND MOTION TO DISMISS AND
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Local Civil Rule 7(a)(1), the federal defendant, United States Attorney General Pamela Jo Bondi, respectfully submits this memorandum in support of her second motion to dismiss the amended complaint, which memorandum also serves as her opposition to the plaintiffs' motion for injunctive relief (originally filed at ECF 4).

The Second Amendment's right to keep and bear arms is a fundamental right that is essential to ordered liberty.  Unjustifiable restrictions on that right present a grave threat to Americans' most cherished freedoms, and courts should exercise the utmost vigilance in guarding that right from legislative or regulatory infringement.  There are, however, narrow circumstances in which the government may justifiably burden that right, and Section 922(b)(1) – and related statutes and regulations – arise out of such a circumstance.  Specifically, the restrictions at issue here stand solidly within our Nation's history and tradition, which greatly restricted the rights of those under the age of twenty-one.  The Second Circuit has not yet addressed the issue, but two circuits have affirmed the constitutionality of handgun restrictions on those under the age of twenty-one.  See McCoy v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 140 F.4th 568, 580 (4th

Cir. 2025) ("There plainly exists a robust tradition that supports the constitutionality of § 922(b)(1)."); Nat'l Rifle Ass'n v. Bondi, 133 F.4th 1108, 1130 (11th Cir. 2025) ("The Florida law that prohibits minors from purchasing firearms does not violate the Second and Fourteenth Amendments because it is consistent with our historical tradition of firearm regulation."). But see Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 127 F.4th 583, 600 (5th Cir. 2025) ("18 U.S.C. §§ [922](b)(1), (c)(1) and their attendant regulations are unconstitutional in light of our Nation's historic tradition of firearm regulation.").[1]

The federal defendant respectfully urges this court to reach the same conclusion as the Fourth and Eleventh Circuits and to dismiss the amended complaint as it pertains to the federal government; in the alternative, the court should deny the plaintiffs' motion for preliminary injunctive relief.

I. **Factual Background and Procedural History**

On February 18, 2025, the plaintiffs – two individuals and two advocacy groups – filed the original complaint in this case, along with a companion motion for temporary restraining order and for a preliminary injunction. (ECF 1, 4.) Following a conference and limited briefing, the court denied plaintiffs' motions for a temporary restraining order on March 14, 2025. (ECF 34.) On May 6, 2025, the court entered a scheduling order

---

[1] The Supreme Court recently granted petitions for writs of certiorari in Wolford v. Lopez, No. 24-1046 (Oct. 3, 2025), and United States v. Hemani, No. 24-1234 (Oct. 20, 2025)—Second Amendment cases that could shed light on the proper resolution of this case and lead to the resolution of the circuit conflict.

that, among other things, consolidated the preliminary and permanent injunction proceedings and allowed the plaintiffs to file an amended complaint. (ECF 48.)

On May 18, 2025, the plaintiffs filed the operative amended complaint. (ECF 49.) In relevant part, the amended complaint alleges that the individual plaintiffs – Zachary Succow and Samuel Towne – are Connecticut residents between the ages of eighteen and twenty-one who are prohibited from lawfully purchasing or otherwise obtaining ownership of a handgun because of certain federal and state laws. (Am. Compl. ¶¶31-33, 41-44.) As it pertains to the federal defendant, the amended complaint alleges a single count – count two – which alleges that the "federal handgun ban" (which the plaintiffs define as the applicable federal statutes and regulations, see id. ¶106) violates the plaintiffs' rights under the Second Amendment to the United States Constitution. (Id. ¶147.)

For relief against the federal defendant, the amended complaint seeks:

- First, a "declaratory judgment that the provisions of 18 U.S.C. § 922(b)(1), 18 U.S.C. § 924(a)(1)(D), 18 U.S.C. § 922(c), [and] 27 C.F.R. § 478.99(b)(1) that operate to prohibit individuals between 18 years of age and 20 years of age from acquiring handguns and handgun ammunition are unconstitutional" facially and as applied to the plaintiffs. (Id., Prayer for Relief, ¶C.)

- Second, a "permanent injunction enjoining [the federal government] from enforcing the provisions of 18 U.S.C. § 922(b)(1), 18 U.S.C. §924(a)(l)(D), 18 U.S.C. § 922(c), [and] 27 C.F.R. § 478.99(b)(1) that operate to prohibit individuals between 18

years of age and 20 years of age from acquiring handguns and handgun ammunition" (id. ¶D); and

- Third, in the alternative, "a declaratory judgment and a permanent injunction enjoining [the federal government] from prohibiting the State of Connecticut and the Connecticut state police from using the National Instant [Criminal Background] Check System ('NICS') for private party handgun transfers to eligible persons 18 to 20 years of age." (Id., ¶E.)

On June 13, 2025, the federal defendant filed a partial motion to dismiss the amended complaint (ECF 57), which motion remans pending; on September 22, 2025, the court indicated that it "intends to decide the motions to dismiss and the motion for a preliminary injunction together." (ECF 70.) The federal defendant now moves to dismiss the amended complaint in its entirety as it relates to the federal government and also opposes the plaintiffs' motion for injunctive relief.

## II. Legal Standards

### A. Motion to Dismiss

A motion to dismiss under FRCP 12(b)(6) tests the sufficiency of the allegations in the complaint. In considering such a motion, the court takes the complaint's "factual allegations to be true and draws all reasonable inferences in" favor of the plaintiffs. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "Although a court must accept as true all of the

allegations contained in a complaint, this tenet is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Sikhs for Justice, Inc. v. Gandhi, 614 Fed. Appx. 29, 30 (2d Cir. 2015) (citation and internal quotation marks omitted).[2]

    B.    Injunctive Relief

> To obtain a preliminary injunction that will affect government action taken in the public interest pursuant

---

[2] As noted above, the federal defendant's first motion to dismiss, which initially raised arguments also under Rule 12(b)(6), remains pending. Because of that, the federal defendant has not yet answered the amended complaint, which means that the pleadings remain open at the time of this filing, and the federal defendant therefore cannot yet move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings"). As a result, the federal defendant has filed a second motion under Rule 12(b)(6) arguing that the amended complaint fails to state a viable legal claim against the federal government.

While Rule 12(g)(2) contains a general principle of consolidation providing that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion," that provision contains an exception set forth in Rule 12(h)(2) for arguments concerning the failure of the operative pleading to state a claim. District courts in this circuit have recognized a split in authority on the question of whether the federal rules authorize successive motions to dismiss for failure to state a claim. See Edmondson v. Raniere, No. 20-CV-485 (EK)(CLP), 2025 WL 1755843, at *2 & n.4 (E.D.N.Y. June 25, 2025) (citing cases). Regardless of whether the federal rules entitle a movant to successive 12(b)(6) motions, the Edmondson court properly concluded that such a successive motion should be permitted by the court where "addressing the merits now will spare the parties (and the Court) another round of likely repetitive briefing." Id. at *2; see also id. (observing that even where the successive motion is denied as "procedurally improper," the movant "could easily re-raise the same argument in a motion for judgment on the pleadings under Rule 12(c)"). For the sake of efficiency, and since the successive motion was not filed to delay the proceedings; cf. Lemberg L., LLC v. eGeneration Mktg., Inc., No. 3:18-CV-570 (CSH), 2020 WL 2813177, at *5 (D. Conn. May 29, 2020) ("if successive Rule 12(b)(6) motions are interposed to delay the proceedings–e.g., where defendants knew of grounds for a 12(b)(6) motion but purposely failed to assert them in a prior such motion for purpose of delay–successive motions may be disallowed"), the federal defendant respectfully submits that the court should decide the second motion to dismiss on the merits.

> to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction. . . . The movant must also show that the balance of equities supports the issuance of an injunction.

We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 279-80 (2d Cir.) (cleaned up), opinion clarified, 17 F.4th 368 (2d Cir. 2021). "The party requesting permanent injunctive relief must demonstrate (1) irreparable harm (here, a constitutional violation) and (2) actual success on the merits." Ognibene v. Parkes, 671 F.3d 174, 182 (2d Cir. 2011). "Thus, the standard for a permanent injunction is similar to the standard for a preliminary injunction, but a plaintiff must show actual success rather than a likelihood of success." Williams v. Paxton, No. 3:21CV966 (VLB), 2021 WL 5889271, at *5 (D. Conn. Dec. 13, 2021).

### III. Argument

#### A. Legal Framework

The Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921-931, establishes a comprehensive federal regulatory scheme governing the manufacture and distribution of firearms and ammunition. Congress's "principal purpose" in enacting this legislation was to "curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" Huddleston v. United States, 415 U.S. 814, 824 (1974) (quoting S. Rep. No. 1501 at 22 (1968)). The Gun Control Act thus prohibits, among other things, certain categories of persons from receiving or possessing firearms or ammunition in or affecting interstate or foreign commerce. 18 U.S.C. § 922(g). Among the prohibited categories are certain felons,

6

persons who have been adjudicated as "mental defectives," noncitizens who are present in the country unlawfully, and persons who have been convicted of certain domestic violence crimes. Id. § 922(g)(1), (4), (5), (9). These provisions are paired with a prohibition on the transfer of firearms to certain classes of prohibited persons. Id. § 922(d). The Gun Control Act also prohibits federal firearms licensees from transferring firearms or ammunition to individuals under the age of eighteen. Id. § 922(b)(1). It further prohibits FFLs from transferring firearms and ammunition other than shotguns, rifles, and ammunition for shotguns and rifles to individuals under the age of twenty-one. Id.

The restrictions do not prevent 18-to-20-year-olds from possessing and using handguns, nor do the restrictions prevent those individuals from obtaining handguns "from parents or guardians" or "though unlicensed, private sales." Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 700 F.3d 185, 189-90 (5th Cir. 2012) (subsequent history omitted); see also 18 U.S.C. § 922(x)(2) (setting eighteen as the minimum age under federal law to possess a handgun). The restrictions also do not prevent 18-to-20-year-olds from purchasing rifles or shotguns.

  B. The Challenged Federal Restrictions are Constitutional

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. The Second Amendment secures a "general right" to possess and carry arms for lawful purposes such as self-defense. NYSRPA v. Bruen, 597 U.S. 1, 31 (2022). That right is among the "fundamental rights necessary to our system

7

of ordered liberty." McDonald v. City of Chicago, 561 U.S. 742, 778 (2010).  The founding generation believed that, when that right is infringed, "liberty, if not already annihilated, is on the brink of destruction." District of Columbia v. Heller, 554 U.S. 570, 606 (2008) (citation omitted).  Today, "millions of Americans" rely on that right in possessing and carrying arms for the "defense of self, family, and property." Id. at 624 n.24, 628.

"Under Bruen, the Supreme Court articulated a two-step framework to evaluate Second Amendment challenges." Giambalvo v. Suffolk Cnty., New York, -- F.4th --, No. 23-208-CV, 2025 WL 2627368, at *6 (2d Cir. Sept. 12, 2025).  "First, we must ask whether 'the Second Amendment's plain text covers an individual's conduct.' . . . If it does not, the constitutional inquiry ends, and a plaintiff's challenge to the law fails." Id. (quoting Bruen, 597 U.S. at 24).  "If the individual's conduct is covered, then 'the Constitution presumptively protects that conduct,' and '[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'" Id.  When the government regulates that right, it bears a significant burden in justifying its regulation. See Bruen, 597 U.S. at 17.  "In considering the second inquiry, we must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" Giambalvo, 2025 WL 2627368, at *6 (quoting Bruen, 597 U.S. at 29 & n.7).

"[W]hen a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster.  The law must

comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'"[3]  United States v. Rahimi, 602 U.S. 680, 692 (2024).  That is a rigorous test, not a "regulatory blank check"; Bruen, 597 U.S. at 30; and is one that permits certain narrow restrictions but prohibits laws that "broadly restrict arms use by the public generally."  Rahimi, 602 U.S. at 698.

Under that standard, federal restrictions that prevent FFLs from transferring handguns to those under the age of twenty-one comply with the Second Amendment.  The federal defendant does not dispute that the conduct at issue here is implicated by the Second Amendment, but the federal scheme nevertheless passes constitutional muster at step two of Bruen.  Specifically, federal age-based restrictions only apply to some firearm transfers to a group of prospective transferees that, in large part, lacked legal rights at the time of the Founding because of their age.

"At the Founding, a person was an 'infant[]' or a 'minor[ ]' in the eyes of the law until age 21."  Nat'l Rifle Ass'n v. Bondi, 133 F.4th 1108, 1117 (11th Cir. 2025) (citing 1 Zephaniah Swift, a System of the Laws of the State of Connecticut 213 (1795)); see also 1 William Blackstone, Commentaries on the Laws of England 451 (1765) ("So that full age in male or female, is twenty one years[] . . . who till that time is an infant, and so

---

[3] "To determine whether [a challenged] law is consistent with our regulatory tradition, we must first decide what tradition is relevant to that inquiry."  NRA v. Bondi, 133 F.4th at 1115 (emphasis in original).  The Second Circuit has observed that the regulatory tradition at the time of the Founding is relevant to the court's consideration, though that court also has held that the Reconstruction era is "relevant to state regulations."  Zherka v. Bondi, 140 F.4th 68, 78 n.14 (2d Cir. 2025).  The court has not decided – and given that Founding-era regulations support the federal defendant's position in this case, this court also need not reach – "whether historical traditions post-dating 1791 are relevant to the Amendment's restrictions on Congress."  Id.

styled in law."). Consistent with the common law understanding, the "American colonies, then the United States, adopted age twenty-one as the near universal age of majority." Vivian E. Hamilton, Adulthood in Law and Culture, 91 Tul. L. Rev. 55, 64 (2016); see also 2 James Kent, Commentaries on American Law 191 (1827) (confirming that "the inability of infants to take care of themselves[] . . . continues, in contemplation of law, until the infant has attained the age of twenty-one years").

"English law set the age of majority at 21 years of age because of the relative lack of maturity and judgment of younger individuals." NRA v. Bondi, 133 F.4th at 1117 (citing Blackstone at 453). The Founders concurred, emphasizing their view that reason and judgment are not fully developed before age 21. For example, John Adams observed that individuals under that age could not vote because they lack "[j]udgment" and "[w]ill" and are not "fit to be trusted by the [p]ublic." Letter from John Adams to James Sullivan, May 26, 1776, https://perma.cc/CE79-RA8K (on file with the National Archives). Gouverneur Morris, a signer of the Constitution and drafter of its Preamble, likewise warned that under-21-year-olds "want prudence" and "have no will of their own." James Madison's Notes of the Constitutional Convention, August 7, 1787, Yale L. Sch. Avalon Project, https://perma.cc/QJ7B-D4J4. Similarly, although at the Founding citizens generally had a duty to serve as peace officers, among those ineligible for such service were "infants" – that is, individuals under the age of 21. John Faucheraud Grimké, The South Carolina Justice of Peace 117 (R. Aitken & Son eds., 1788).

Those attitudes also reflect historical norms concerning parental supervision of 18-to-20-year-olds: "[b]ecause of their lack of reason, infants were subject to the "power"

10

of their parents until they reached age 21." NRA v. Bondi, 113 F.4th at 1117. Specifically,

> [p]arents "ha[d] the benefit" and "receive[d] the profits" of their children's labor. 1 Blackstone, supra, at *453. Minors could not sue to vindicate their rights without joining their guardians or some other "next friend" who was not their guardian. Id. at *464. Parents controlled children's access to information, including books. Brown v. Ent. Merchs. Ass'n, 564 U.S. 786, 831-32 . . . (2011) (Thomas, J., dissenting). Nor could they enlist in the military without parental consent. Act of March 16, 1802, 2 Stat. 132, 135 ("[N]o person under the age of twenty-one years shall be enlisted by any officer, or held in the service of the United States, without the consent of his parent."). Families in New England were arranged so that the "[p]atriarchal household heads sp[oke] for their dependents in dealings with the larger world." Toby L. Ditz, Ownership and Obligation: Inheritance and Patriarchal Households in Connecticut, 1750-1820, 47 Wm. & Mary Q. 235, 236 (1990). Dependent minors "lacked the formal capacity to participate in public life and [were] subject to the authority of household heads." Id. at 237.

NRA v. Bondi, 113 F.4th at 1117-18.; see also id. at 1118 (noting that "minors generally lacked the capacity to contract" and that "[t]he inability to contract impeded minors from acquiring firearms during the Founding era"). Ultimately, then, Founding-era laws and norms reflect a tradition that parents had an extraordinary degree of control over the lives of their minor children, which control extended to the minors' access to firearms.

The amended complaint's allegation that that "Founding-era militia statutes throughout the seventeenth and eighteenth centuries not only permitted, but affirmatively mandated that persons aged eighteen to twenty acquire and keep arms" (Am. Compl., ¶149) does not change the analysis. It is true that "the Second Congress passed the Militia Act to enroll 'able-bodied' men between the ages of 18 and 45 in the militia";

11

NRA v. Bondi, 133 F.4th at 119 (citing Militia Act of May 8, 1792, 1 Stat. 271, 271); and that "[t]he Act provided that 'every citizen so enrolled . . . shall . . . provide himself with a good musket or firelock.'" Id.  But "the Militia Act did not mandate 18 as the universal age of militia eligibility" and instead "explicitly allowed states to exempt individuals from militia service 'notwithstanding their being above the age of eighteen.'" McCoy, 140 F.4th at 578 (quoting 1 Stat. at 272).  Moreover, "members of Congress recognized that individuals between the ages of 18 and 21 would need their parents to provide them weapons to comply with the Act"; NRA v. Bondi, 133 F.4th at 1119; and "[s]tates addressed the problem of providing minors the firearms necessary for militia service in different ways." Id. at 119-20 (collecting statutes); see also id. at 1120 ("By 1826, at least 21 of the 24 states admitted to the Union . . . had enacted laws that placed the onus on parents to provide minors with firearms for militia service. These laws reflected that, at common law, minors could not purchase weapons for themselves.").  Put simply, contrary to the plaintiffs claim, there is a comparable tradition at the Founding of regulation of the commercial purchase of firearms by those under the age of twenty-one irrespective of the Militia Act and state-enacted laws that followed it.

With this history in mind, this court should "draw two lessons from the legal treatment of minors at the Founding. First, minors generally could not purchase firearms because they lacked the judgment and discretion to enter contracts and to receive the wages of their labor.  Second, minors were subject to the power of their parents and depended on their parents' consent to exercise rights and deal with others in society." NRA v. Bondi, 133 F.4th at 1118; see also McCoy, 140 F.4th at 577 ("In sum, the

infancy doctrine demonstrates that there was an early American tradition of burdening the ability of 18- to 20-year-olds to purchase goods, including firearms.").

Moreover, the "[w]hy and how"; see Rahimi, 602 U.S. at 692; of current federal restrictions on the commercial purchase of handguns by those under the age of twenty-one comport with that historical tradition. Specifically, § 922(b)(1) and related restrictions have "the same 'why' as the Founding-era limitations," namely, congressional judgment that "individuals under the age of 21 have not reached the age of reason and lack the judgment and discretion to purchase firearms responsibly." NRA v. Bondi, 133 F.4th at 1122-23. And current federal regulations also are "consistent with our regulatory tradition in 'how' [they] burden[] the right" because they "prohibit[] purchase but preserve[] access to firearms with parental consent." Id. at 1123.

Because the challenged federal laws are consistent with historical tradition, they comport with the Second Amendment. Consequently, the amended complaint fails to state a claim (and should be dismissed) as to the federal defendant; in the alternative, the court should deny the plaintiffs' motion for preliminary injunction pending any further proceedings.

      C.      The Plaintiffs Further Fail to State a Claim with Respect to Their Alternative Claim for Relief

As noted above, the challenged federal laws and regulations at issue are constitutional, and the amended complaint therefore fails to state a claim upon which any claim for relief may be granted against the federal government. The amended complaint also contains an alternative request for relief against the federal government that is deficient for the additional reason that the plaintiffs fail to plead relevant unconstitutional

conduct on the part of the federal government. Specifically, in terms of that request for relief, the plaintiffs seek "a declaratory judgment and a permanent injunction enjoining [the federal government] from prohibiting the State of Connecticut and the Connecticut state police from using the National Instant [Criminal Background] Check System ('NICS') for private party handgun transfers to eligible persons 18 to 20 years of age." (Am. Compl., Prayer for Relief, ¶E.)

But the amended complaint nowhere alleges that any federal law or regulation requires that the plaintiff reach the age of twenty-one to obtain a handgun through a private transfer or that a NICS check must be run to facilitate such a transfer. To be sure, the plaintiffs allege that state law requires those conditions to be met. (See Am. Compl. ¶82 (citing Conn. Gen. Stat. § 29-34(b)) & ¶91 (citing Conn. Gen. Stat. § 29-33(c).) However, because the plaintiffs do not – and cannot – allege comparable federal requirements, they do not plead an adequate claim for the alternative relief they seek against the federal government. See McRorey v. Garland, 99 F.4th 831, 839 (5th Cir. 2024) ("The problem with plaintiffs' use of this phenomenon is that it is not a requirement of the challenged law. Plaintiffs have not pointed to any provision of the law that requires dealers to wait more than 10 business days. That dealers choose to do so is a result of their own policy, as plaintiffs readily admit.").

That pleading failure alone is fatal to the plaintiffs' claim for alternative injunctive relief against the federal government. But even if it were not, and even if the availability of NICS were relevant to claims against the federal government, the plaintiffs nowhere allege that the federal government is prohibiting the State of Connecticut from

14

using NICS to facilitate a private-party handgun transfer; rather, the amended complaint alleges that "Defendant Higgins took the position that federal law proscribes the use of the NICS background check system for the purpose of processing a private party transfer without the involvement of an FFL." (Am. Compl. ¶94; see also id. ¶96 ("per Defendant Higgins' policy, the background checks mandated by Connecticut law for private party transfers . . . cannot be conducted under federal law absent the involvement of an FFL, and any requests for such background checks will not be processed by the FBI"). Accordingly, since the amended complaint does not allege misconduct on the part of the federal government as it pertains to operation of NICS, the plaintiffs' alternative claim for injunctive relief against the federal government is not substantively viable.[4]

---

[4] Alternatively, the plaintiffs' failure on this point also demonstrates that they lack standing to prosecute the claim that the requested alternative injunction against the federal defendant is necessary to vindicate the plaintiffs' Second Amendment rights. "To establish Article III standing, a plaintiff must demonstrate '(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.'" Davis v. Dynata, LLC, No. 3:22-CV-1062 (SVN), 2023 WL 6216809, at *7 (D. Conn. Sept. 25, 2023) (quoting Thole v. U. S. Bank N.A., 140 S. Ct. 1615, 1618 (2020)). "The causation component of the Article III standing test [e]nsures that the injury alleged by a plaintiff is attributable to the defendant." Garelick v. Sullivan, 987 F.2d 913, 919 (2d Cir. 1993); see also Est. of Gardner v. Cont'l Cas. Co., 316 F.R.D. 57, 68 n.10 (D. Conn. 2016) ("Where, as here, a plaintiff seeks injunctive relief," the alleged injury or threat of injury "must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury" (internal quotation marks omitted)).

In this case, because the amended complaint alleges only that Defendant Higgins has taken the position that background checks required by Connecticut state law are not authorized by federal law, and because it does not allege that the federal government has ever actually prohibited the use of NICS under the relevant circumstances, the plaintiffs' claimed injury is neither traceable to any challenged action on the part of the federal government, nor is it likely to be redressed by the injunction that the plaintiffs seek in their alternative claim for relief against the federal government. See McRorey, 99 F.4th

15

Ultimately, like the claims in McRorey, the plaintiffs here fail to cite any federal statute/regulation requiring a NICS check be conducted prior to receiving any privately owned firearm – let alone every time one seeks to receive a privately owned firearm. Rather, according to the amended complaint, it is Connecticut state law that restrains the individual plaintiffs (by age and the state defendants' view of NICS-check requirements) from obtaining firearms privately. The plaintiffs' claims against the federal government, as they pertain to paragraph E of the amended complaint's prayer for relief, should be dismissed.

### IV. Conclusion

For the foregoing reasons, the federal defendant respectfully urges the court to dismiss the amended complaint as against her or, in the alternative, deny the plaintiffs' motion for injunctive relief.

David X. Sullivan
United States Attorney

  /s/
John W. Larson (ct28797)
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
T: (860) 947-1101
F: (860) 760-7979
john.larson@usdoj.gov

---

at 839 ("'a third party's legitimate discretion breaks the chain of constitutional causation'" (quoting Turaani v. Wray, 988 F.3d 313, 317 (6th Cir. 2021)) (cleaned up)).

16