**ATTACHMENT D**

, UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZACHARY SUCCOW et al., | : | No.: 3:25cv250 (SVN) |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PAMELA JO BONDI et al., | : | |
|     Defendants. | : | |

**FEDERAL DEFENDANT'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Pursuant to the court's instructions for the joint trial memorandum, the federal defendant respectfully provides its position on proposed findings of fact and conclusions of law in connection with the trial in this case.

I.    Findings of Fact are Not Required to Resolve this Case

Put simply, the position of the federal government is that the historical inquiry set out in New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022), is a legal one, not a factual one, and therefore no specific findings of fact are necessary to support a judgment in favor of the federal government in this case.  More specifically, in Bruen, the Supreme Court explained that judicial review of gun laws should focus on "the Second Amendment's text" and on "the historical tradition that delimits the outer limits of the right to keep and bear arms."  142 S. Ct. at 2127.  A law complies with the Second Amendment if it regulates conduct that falls outside the Amendment's "plain text" or if the regulation comports with "this Nation's historical tradition of fire-arm regulation."  Id. at 2126.

Applying Bruen's "text-and-history test," 142 S. Ct. at 2130 n.6, involves answering a question of law—not a question of fact or a mixed question of law and fact. Bruen itself makes that clear.  The Bruen Court stated that the "job of judges is not to resolve historical questions in the abstract; it is to resolve legal questions presented in particular cases or controversies."  Id.  The Court also expressly described its test as a "legal inquiry."  Id. (citation omitted).

That makes sense. It is well established that the "interpretation" of a constitutional or statutory provision "is a question of law."  Chandris, Inc. v. Latsis, 515 U.S. 347, 369 (1995).  That is so even when interpretation involves historical work or otherwise depends in part on "legislative facts"—that is, facts that bear on "the formulation of a legal principle or ruling by a judge or a court" as distinct from "the facts of the particular case."  Fed. R. Evid. 201 advisory committee's note.  The Supreme Court, for example, has relied on history and tradition in interpreting a range of constitutional provisions, including Article II, see Zivotofsky v. Kerry, 576 U.S. 1, 23-28 (2015); Article III, see TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021); the Establishment Clause, see Marsh v. Chambers, 463 U.S. 783, 786-792 (1983); the Free Speech Clause, see Houston Community College System v. Wilson, 142 S. Ct. 1253, 1259-1260 (2022); the Due Process Clause, see Burnham v. Superior Court, 495 U.S. 604, 610-616 (1990) (plurality opinion); and the Confrontation Clause, see Crawford v. Washington, 541 U.S. 36, 42-50 (2004).  And "courts, in construing a statute, may with propriety recur to the history of the times when it was passed."  Leo Sheep Co. v. United States, 440 U.S. 668, 669 (1979) (citation omitted).  Yet in all those contexts, courts treat the inquiry into

history as a legal question, not a factual question.  Courts should follow the same approach under the Second Amendment.

In addition, as the Supreme Court explained in discussing the common-law rule that treated questions of foreign law as questions of fact, treating <u>Bruen</u>'s historical inquiry as a question of fact would produce "a number of undesirable practical consequences."  <u>Animal Science Prods., Inc. v. Hebei Welcome Pharm. Co.</u>, 138 S. Ct. 1865, 1873 (2018) (citation omitted).  The relevant historical material would have to be established in each case "in accordance with the rules of evidence," and appellate review would be "deferential and limited to the record made in the trial court."  <u>Id.</u> (citation omitted).  As a result, the meaning of the Second Amendment could vary from case to case depending on the particular record the parties compiled in the district court.

Moreover, because applying <u>Bruen</u> involves answering a question of law, courts of appeals may rely on legal arguments that are raised for the first time on appeal or that are raised in amicus briefs.  "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."  <u>Yee v. City of Escondido</u>, 503 U.S. 519, 534 (1992).  And "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties."  <u>Kamen v. Kemper Financial Services, Inc.</u>, 500 U.S. 90, 99 (1991).  Although a court is "not <u>obliged</u> to sift the historical materials" itself, <u>Bruen</u>, 142 S. Ct. at 2150 (emphasis added), it "retains the independent <u>power</u> to identify and apply the proper construction of governing law," <u>Kamen</u>, 500 U.S. at 99 (emphasis added); <u>see</u> Fed. R. Evid. 201 advisory committee's note ("In determining the content or

3

applicability of a rule of domestic law, the judge . . . may make an independent search for persuasive data or rest content with what he has or what the parties present." (citation omitted)). In <u>Bruen</u> itself, the Supreme Court evaluated a broad range of potential historical analogies proffered by the State of New York and its amici, without pausing to consider whether New York had invoked the same analogies in the lower courts. <u>See</u> 142 S. Ct. at 2134-56.

II.     <u>Conclusions of Law</u>

"Under <u>Bruen</u>, the Supreme Court articulated a two-step framework to evaluate Second Amendment challenges." <u>Giambalvo v. Suffolk Cnty., New York</u>, -- F.4th --, No. 23-208-CV, 2025 WL 2627368, at *6 (2d Cir. Sept. 12, 2025). "First, we must ask whether 'the Second Amendment's plain text covers an individual's conduct.' . . . If it does not, the constitutional inquiry ends, and a plaintiff's challenge to the law fails." <u>Id.</u> (quoting <u>Bruen</u>, 597 U.S. at 24). "If the individual's conduct is covered, then 'the Constitution presumptively protects that conduct,' and '[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'" <u>Id.</u> When the government regulates that right, it bears a significant burden in justifying its regulation. <u>See</u> <u>Bruen</u>, 597 U.S. at 17. "In considering the second inquiry, we must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" <u>Giambalvo</u>, 2025 WL 2627368, at *6 (quoting <u>Bruen</u>, 597 U.S. at 29 & n.7).

"[W]hen a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster. The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" United States v. Rahimi, 602 U.S. 680, 692 (2024). That is a rigorous test, not a "regulatory blank check"; Bruen, 597 U.S. at 30; and is one that permits certain narrow restrictions but prohibits laws that "broadly restrict arms use by the public generally." Rahimi, 602 U.S. at 698.

Under that standard, federal restrictions that prevent FFLs from transferring handguns to those under the age of twenty-one comply with the Second Amendment. The federal defendant does not dispute that the conduct at issue here is implicated by the Second Amendment, but the federal scheme nevertheless passes constitutional muster at step two of Bruen. Specifically, federal age-based restrictions only apply to some firearm transfers to a group of prospective transferees that, in large part, lacked legal rights at the time of the Founding because of their age.

Respectfully submitted,

David X. Sullivan
United States Attorney

  /s/  
John W. Larson (ct28797)
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
T: (860) 947-1101
F: (860) 760-7979
john.larson@usdoj.gov

5