UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZACHARY SUCCOW, et al., ) | 3:25-CV-250 (SVN) |
|    *Plaintiffs*, ) | |
| ) | |
| v. ) | |
| ) | |
| PAMELA JO BONDI, et al., ) | |
|    *Defendants*. ) | December 18, 2025 |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS**

Sarala V. Nagala, United States District Judge.

Plaintiffs Zachary Succow and Samuel Towne, both nineteen-year-old citizens of Connecticut at the time of the filing of their amended complaint, allege state and federal laws prohibiting the possession and use of handguns by individuals under the age of twenty-one violate their Second and Fourteenth Amendment rights. Joining them as Plaintiffs are the Connecticut Citizens Defense League, Inc. ("CCDL") and the Second Amendment Foundation ("SAF") (together, the "Organizational Plaintiffs"), two non-profit Second Amendment advocacy organizations of which Plaintiffs are both members. Plaintiffs seek declaratory and injunctive relief against various federal and state officers sued in their official capacities.[1]

All Defendants have moved to dismiss the Organizational Plaintiffs from this action for lack of standing. For the reasons described below, the Court GRANTS the State and Local Defendants' motions to dismiss the Organizational Plaintiffs' claim under 42 U.S.C. § 1983 in Count One, and DENIES Defendant Bondi's motion to dismiss the Organizational Plaintiffs' direct

---

[1] Defendants are United States Attorney General Pamela Jo Bondi; Connecticut Department of Emergency Services and Public Protection Commissioner Ronnell Higgins, Connecticut State's Attorney for the Ansonia/Milford Judicial District Margaret E. Kelley, and Connecticut State's Attorney for the New London Judicial District Paul J. Narducci (together, the "State Defendants"); and Seymour Police Chief John Bucherati and Norwich Police Chief Patrick Daley (together, the "Local Defendants").

Second Amendment claim in Count Two.  The Organizational Plaintiffs may pursue Count Two on a representational standing theory only.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Federal law bars individuals and companies with federal firearms licenses from selling or delivering handguns or handgun ammunition to individuals under age twenty-one.  *See* 18 U.S.C. § 922(b)(1); 18 U.S.C. § 922(c); 18 U.S.C. § 924(a)(1)(D); 27 C.F.R. § 478.99(b)(1).  Connecticut state law bars individuals from selling or otherwise providing a handgun to individuals under age twenty-one and prohibits individuals under age twenty-one from obtaining a handgun permit or applying for an eligibility certificate for a handgun.  *See* Conn. Gen. Stat. § 29-28(b), Conn Gen. Stat. § 29-34(b), and Conn. Gen. Stat. § 29-36f.  For the purposes of this ruling, the Court will refer to these limitations collectively as "state and federal handgun restrictions."

The amended complaint contains the following relevant allegations, which are accepted as true for the purpose of this ruling.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court sets forth only allegations relevant to the present motion.

Plaintiffs Succow and Towne share a similar background.  Both were nineteen years old at the filing of the amended complaint and reside in Connecticut:  Succow in Seymour and Towne in Norwich.  Am. Compl., ECF No. 49 ¶¶ 31–32, 41–42.  Both seek to acquire a handgun "for self-defense and all other lawful purposes."  *Id.* ¶¶ 37, 46.  Both allege that but for their age, they meet all other state requirements to apply for temporary—and later permanent—pistol permits.  *Id.* ¶¶ 36, 38, 47, 49.

Succow and Towne are also both members of CCDL and SAF.  *Id.* ¶¶ 56, 59.  CCDL is a non-profit with more than 41,000 members that is incorporated in Connecticut.  *Id.* ¶ 52.  CCDL seeks to "preserve the effectiveness of the Second Amendment through legislative and grassroots

advocacy, outreach, education, research, publication, legal action, and programs focused on the constitutional right to keep and bear arms." *Id.* CCDL "represents its members and supporters," and has brought this action "on behalf of itself, its members, supporters [sic] who possess all the indicia of membership, and similarly situated members of the public." *Id.*

CCDL alleges that it has "expended and diverted resources otherwise reserved for different institutional functions and purposes" due to this action, and has been "adversely and directly harmed" by the conduct alleged in the second amended complaint. *Id.* ¶ 53. Specifically, the conduct complained of "has forced, or likely will force, CCDL to divert previously allocated funds, energies, and resources to the cause of this legal action" as opposed to "other educational, outreach, public relations, and/or programmatic events and operations." *Id.* ¶ 54. CCDL further alleges "there are common questions of law that substantially affect the rights, duties and liabilities of many of [its] members." *Id.* ¶ 55.

SAF is a non-profit organization, incorporated in the state of Washington. *Id.* ¶ 57. SAF similarly seeks to "preserve the effectiveness of the Second Amendment through educational and legal action programs," and has more than "720,000 members and supporters." *Id.* Specifically, SAF pursues "education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms under the Second Amendment, and the consequences of gun control." *Id.* ¶ 58. SAF alleges that an interpretation of the Second Amendment in this action "directly impacts [their] organizational interests, as well as [their] members and supporters in Connecticut" who are subject to the applicable state and federal handgun restrictions. *Id.* As with CCDL, SAF alleges that Defendants' actions alleged herein "have caused [them] to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public, including by and through this action." *Id.* ¶ 59.

3

Plaintiffs filed their initial complaint and emergency motion for a temporary restraining order ("TRO") and preliminary injunction in February of 2025. Compl., ECF No. 1; Mot. for TRO and Prelim. Injun., ECF No. 4. The Court denied the emergency motion for a TRO insofar as it sought an *ex parte* TRO. Order, ECF No. 16. The Court later denied Plaintiffs' request for a TRO in full, and requested input from the parties as to a briefing schedule for Plaintiffs' pending motion for a preliminary injunction. Order, ECF No. 34. Plaintiffs then filed the operative amended complaint, alleging a claim under 42 U.S.C. § 1983 for violation of their Second and Fourteenth Amendment rights against the State and Local Defendants (Count One) and a claim for direct violation of the Second Amendment by Defendant Bondi (Count Two). Am. Compl., ECF No. 49. All Defendants have moved to dismiss the claims brought against them by the Organizational Plaintiffs in the amended complaint. *See* Motions to Dismiss, ECF Nos. 51 (Bucherati), 52 (State Defendants), 53 & 54 (Daley), and 57 (Bondi). Plaintiffs oppose each of the motions. Pls.' Opp. Briefs, ECF Nos. 60–63.

The Court has consolidated the preliminary injunction hearing with the trial on the merits, under Federal Rule of Civil Procedure 65(a)(2). Order, ECF No. 48. A bench trial is currently scheduled for January 12–14, 2026. *See* Orders, ECF Nos. 48, 94.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter

4

jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[2]

### III. STATE AND LOCAL DEFENDANTS' MOTIONS TO DISMISS

First, the Court concludes that the Organizational Plaintiffs cannot pursue Count One, their § 1983 claim brought against the State and Local Defendants.

Two doctrines are relevant here: (1) standing under Article III of the Constitution; and (2) the concept previously known as "statutory standing."

#### A. Article III Standing

First, under Article III of the Constitution, federal courts may decide only actual cases and controversies. U.S. Const. art. III, § 2. "No principle is more fundamental to the judiciary's proper role[.]" *Raines v. Byrd*, 521 U.S. 811, 818 (1997). When invoking federal jurisdiction, a plaintiff must establish that it has standing under Article III—that is to say, "a personal stake in the outcome of the controversy[.]" *Faculty v. New York Univ.*, 11 F.4th 68, 74 (2d. Cir. 2021) (internal citations and alterations omitted). The "'irreducible constitutional minimum' of standing consists of three elements . . . [(1) ]an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). If a plaintiff does not demonstrate standing under Article III, the federal court lacks subject matter jurisdiction to adjudicate the dispute. *Cortlandt Street Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015).

---

[2] Defendant Bondi also moved to dismiss Count Two under Federal Rule of Civil Procedure 12(b)(6), but withdrew these arguments following developments in an action challenging the same federal laws in another district. *See* Bondi Reply, ECF No. 67. Thus, the Court does not address these arguments. Defendant Bondi has also filed a second motion to dismiss on grounds that Plaintiffs fail to state a Second Amendment violation. Bondi Sec. Mot. to Dismiss, ECF No. 91-1. As this issue will be addressed at the upcoming trial, the Court will decide Bondi's second motion to dismiss as part of its forthcoming bench trial ruling.

5

An organization can assert Article III standing by claiming that it "suffered an injury in its own right or, alternatively, it can assert standing solely as the representative of its members." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 199 (2023) ("*SFFA*") (internal citation omitted). The former approach, asserting injury suffered directly by the organization, is known as "organizational standing." The latter approach, where an organization sues as the representative of its members, is known as representational or associational standing. *Id.*; *see also See A.H. by E.H. v. New York State Dep't of Health*, 147 F.4th 270, 276 (2d Cir. 2025) (citing *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021)).[3]

Plaintiffs have disavowed any reliance on organizational standing that would have been based on injuries suffered directly by the Organizational Plaintiffs, and instead proceed on a theory of representational standing only. ECF No. 60 at 4 n.1; ECF No. 61 at 4, n.1; ECF No. 62 at 3 n.1. To assert representational standing, an organization must show "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. St. Apple Advert. Com'n*, 432 U.S. 333, 343 (1977).

B. <u>Section 1983 Cause of Action</u>

Beyond Article III constitutional standing, there lies a question of whether an organization can bring a § 1983 action at all under Second Circuit precedent. This type of inquiry—previously known as "statutory standing"—is not actually "a standing issue, but simply a question of whether

---

[3] The Court recognizes that the Supreme Court uses the terms "representational standing" and "organizational standing" interchangeably, to refer to an organization bringing suit as a representative of its members. *SAFA*, 600 U.S. at 199. To avoid confusion, the Court uses the term "representational standing," which the Second Circuit has also labeled "associational standing," to refer to this type of suit.

the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).  The Second Circuit has recognized that its cases addressing whether an organization has "standing" to bring a claim under § 1983 are in the vein of a statutory inquiry under § 1983, rather than a jurisdictional inquiry under Article III.  *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 388 n.9 (2d Cir. 2015) (citing *Lexmark*, 572 U.S. at 128 & n.4).

And in that statutory context, "[i]t is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983," *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011), because the rights § 1983 secures are "personal to those purportedly injured" and neither the "'language nor the history [of § 1983] suggests that an organization may sue under the Civil Rights Act for the violations of rights of members.'" *League of Women Voters of Nassau Cnty v. Nassau Cnty Bd. of Sup'rs*, 737 F.2d 155, 160 (2d Cir. 1984) (quoting *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1974), *cert. denied*, 414 U.S. 1146 (1974)); *see also A.H. by E.H.*, 147 F.4th at 277 n.2 ("to the extent that [plaintiff] brings claims under 42 U.S.C. § 1983, '[i]t is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983.'" (quoting *Nnebe*, 644 F.3d at 156)).  As the Second Circuit recognized in *Knife Rights*, this line of cases speaks to the "plausibility" of an organization's "representational claim under § 1983, rather than to [a court's] power" or subject matter jurisdiction to adjudicate the dispute under Article III.  *Knife Rights*, 802 F.3d at 388 n.9.

Under this longstanding Second Circuit precedent, even assuming (without deciding) that the Organizational Plaintiffs have met the requirements for Article III representational standing

test articulated in *Hunt*, they still cannot pursue their § 1983 claim in Count One against the State and Local Defendants. *Aguayo* and its progeny are clear: the Second Circuit does not recognize § 1983 claims brought by organizations seeking to assert the rights of their members. As the Organizational Plaintiffs seek to do exactly that in Count One—assert the rights of their members under § 1983—that count must be dismissed insofar as it is brought by the Organizational Plaintiffs.[4]

The Court rejects Plaintiffs' contention that *Aguayo* was overruled by *Warth v. Seldin*, 422 U.S. 490 (1975) or, more recently, by *SFFA*. *Warth* discusses representational standing in an Article III constitutional (and jurisdictional) context. *See Warth*, 422 U.S. at 511 (noting that if certain requirements are met, "the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction"). And in *SFFA*, the Supreme Court noted that parties did not contest that the organizational plaintiff had satisfied "the three-part test for [representational] standing articulated in *Hunt*," which is an Article III constitutional inquiry. 600 U.S. at 199; *see also* 600 U.S. at 201 ("Because SFFA complies with the standing requirements demanded of organizational plaintiffs in *Hunt*, its obligations *under Article III* are satisfied." (emphasis added)). Thus, it is clear both of these cases concerned Article III representational standing.[5] *Aguayo* and its progeny, on the other hand, concerned whether § 1983 authorizes an organizational plaintiff to bring suit on behalf of its members as a matter of statutory interpretation, and concluded that it does not. Since neither *Warth* nor *SFAA* addressed the statutory issue raised

---

[4] As a technical matter, since *Aguayo* and its progeny do not implicate the Court's subject matter jurisdiction, the dismissal of Count One is made under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

[5] Because *SFFA* discussed Article III standing, not a statutory cause of action under § 1983, Plaintiffs' arguments that the Supreme Court silently abrogated the *Aguayo* line of cases when it "assured itself" of jurisdiction is not applicable here. ECF No. 61 at 6; ECF No. 62 at 6.

by *Aguayo*, they are inapposite to the Court's holding here. Instead, *Aguayo* and the line of cases that follow it control.[6]

For these reasons, the Court grants the State and Local Defendants' motion to dismiss the Organizational Plaintiffs' § 1983 claim in Count One.

## IV.    FEDERAL DEFENDANT'S MOTION TO DISMISS

Count Two of the amended complaint alleges direct violations of the Organizational Plaintiffs' Second Amendment rights against Defendant Bondi. Am. Compl. at 33–34. Defendant Bondi has withdrawn most of her arguments for dismissal, due to developments in another case addressing the federal laws at issue. *See* ECF No. 67. At oral argument, her counsel expressed that the only live issue from her motion to dismiss is whether the Organizational Plaintiffs have adequately alleged organizational standing to pursue Count Two, as she has withdrawn her opposition to the Organizational Plaintiffs' assertion of representational standing. As noted above, Plaintiffs have disavowed reliance on an organizational standing theory. *See, e.g.*, ECF No. 60 at 4 n.1. Thus, because the Organizational Plaintiffs have not plausibly alleged organizational standing, they may not proceed on this theory. But because Count Two remains viable on an unopposed representational standing theory, the Court declines to dismiss it. The Organizational

---

[6] At oral argument, Plaintiffs claim to have been unfairly surprised by the State and Local Defendants' contention in their reply briefing that *Aguayo* addressed the statutory issue of whether § 1983 authorizes claims brought by organizations on behalf of their members, rather than an Article III standing question. While it is true that this argument was more clearly articulated in the State and Local Defendants' reply briefs than in their opening papers, they discussed it in the context of distinguishing *SFFA*, on which Plaintiffs had heavily relied in their opposition briefs. *See* D. Conn. L.R. 7(d) (a reply brief "must be strictly confined to a discussion of matters *raised by . . . the memorandum to which it replies*" (emphasis added)). Thus, the Court considers the argument to be appropriately responsive to Plaintiffs' opposition, rather than newly raised on reply. And to the extent Plaintiffs contend they would not have conceded the issue of organizational standing—based on injury to the organizations themselves—had they known that the State and Local Defendants would frame their § 1983 claim as a statutory inquiry, Plaintiffs' sole theory of organizational standing is based on diversion of resources, which has been squarely foreclosed by Supreme Court and Second Circuit law. *Food and Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 394–95 (2024); *Conn. Parents Union*, 8 F.4th at 173.

Plaintiffs may proceed against Defendant Bondi on Count Two under a theory of representational standing only.

## V. CONCLUSION

For the reasons described herein, the motions to dismiss filed by the Local Defendants and the State Defendants at ECF Nos. 51, 52, 53, and 54 are GRANTED, and Count One is dismissed insofar as it is brought by the Organizational Plaintiffs only. The motion to dismiss filed by Defendant Bondi at ECF No. 57 is DENIED. The Organizational Plaintiffs may proceed on Count Two on a representational standing theory only.

**SO ORDERED** at Hartford, Connecticut, this 18th day of December, 2025.

                                           */s/ Sarala V. Nagala*
                                           SARALA V. NAGALA
                                           UNITED STATES DISTRICT JUDGE