## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZACHARY SUCCOW, ET AL | : | No. 3:25-cv-00250-SVN |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| PAMELA J. BONDI, ET AL | : | |
| *Defendants* | : | DECEMBER 23, 2025 |

### <u>State Defendants' Brief Regarding Historical Fact-Finding</u>

Following the December 16, 2025 status conference discussing issues that arose from the joint trial memorandum, the Court, *Nagala, J.*, ordered supplemental briefing "on the issue of whether the Court will need to make findings of fact, as opposed to conclusions of law, related to issues of history." (ECF No. 108.)

This Court should make findings of fact related to issues of history in this case and it should do so based on the unrefuted declarations from State Defendants' expert witnesses. *See Oregon Firearms Federation v. Kotek*, 682 F. Supp. 3d 874, 885 (D. Or. 2023) (making findings of historical legislative facts and adjudicative facts after a bench trial and excluding other proposed legislative facts as inadmissible hearsay). Furthermore, the Court should reject any historical facts or law review articles that Plaintiffs may seek to offer into evidence for the first time now—months after the close of discovery and on the eve of trial. Second Circuit precedent regarding historical facts, along with numerous district court decisions identifying and weighing historical facts as part of the *Bruen* test, provide ample guidance on how to proceed here.

1

## I.     Plaintiffs waived any opportunity to contest State Defendants' historical facts and cannot offer undisclosed or untested historical facts into evidence.

First, this Court should find and weigh State Defendants' historical facts as part of *Bruen*'s historical inquiry and preclude Plaintiffs from offering any new or undisclosed historical facts into evidence or relying on any such facts in support of their legal arguments, consistent with regular civil practice. The record assembled by State Defendants encompasses historical laws, treatises, and three sworn—and entirely unrefuted—declarations from expert witnesses, including two expert historians. Plaintiffs have not offered any evidence that calls the historical record or those declarations into question.

There is no reason for the Court to entertain any belated attempts to supplement or change the record now. From the outset of this proceeding, Plaintiffs disclaimed any intent to offer expert testimony or build their own record of historical facts. *See* Joint Status Report dated March 28, 2025, ECF No. 35, pp. 5-6 (statement by Plaintiffs' counsel that: "The Plaintiffs have not offered experts and have no intention of doing so with respect to the preliminary injunction motion, what remains is a historical inquiry that examines statutes and other laws from our nation's history and tradition. Depositions, interrogatories, and requests for production will do nothing to facilitate or aid that historical inquiry in any way"). In contrast, State Defendants repeatedly emphasized their position that this case requires an evidentiary hearing to decide issues of fact and law, and requested discovery, including expert discovery, in anticipation of that hearing. *See id.*, pp. 6-8; State Defendants' Second Proposed Scheduling Order, ECF No. 45.

Consistent with their initial position, Plaintiffs evinced utter disinterest in building their own historical record or pursuing discovery on the merits, as allowed by the scheduling order. Plaintiffs did not make any initial disclosures under Fed. R. Civ. P. 26(a)(1). Plaintiffs did not serve any written discovery on State Defendants or seek to depose State Defendants' disclosed experts, despite State Defendants' clear intent to build a factual record to offer at trial. Plaintiffs did not identify any historical witnesses, documents, or exhibits to offer into evidence at trial, despite State Defendants' written discovery seeking the same. Plaintiffs did not disclose any expert reports of their own. Plaintiffs did not depose State Defendants' experts in the regular course of discovery. In other words, Plaintiffs' actions in discovery demonstrated that that the record of historical facts prepared by State Defendants was the record they intended to proceed with.

That remains true for the trial. State Defendants' expert testimony here is undisputed. Plaintiffs did not file any motions in limine to preclude the experts' testimony or object to the expert declarations in the Joint Trial Memorandum. At the December 16, 2025 status conference, Plaintiffs' counsel agreed in open court that the Court could consider State Defendants' expert declarations as full exhibits offered into evidence. Plaintiffs will have their day in court to make any arguments regarding the historical record's legal relevance or weight, but they have waived any further opportunity to raise an evidentiary challenge to that record or to introduce new legislative facts that have not been subjected to the adversarial process.[1]

---

[1] Although Plaintiffs cited law review articles in their brief in support of the preliminary injunction, (see ECF 4-1, at 21), they did not identify any experts who would opine as to the

## II.    The Court is entitled to weigh the historical record presented by the parties, which here consists solely of the sworn, unrefuted testimony of the State Defendants' expert historians.

Second, the *Bruen* test embraces the District Court's role as factfinder and gatekeeper when deciding Second Amendment cases. Ultimately, the "'legal inquiry is a refined subset' of a broader 'historical inquiry,' and it relies on 'various evidentiary principles and default rules' to resolve uncertainties." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 25 n.6 (2022) (*quoting* W. Baude & S. Sachs, *Originalism and the Law of the Past*, 37 L. & Hist. Rev. 809, 810-11 (2019)). Depending on the specific claim before the Court, the scope of the inquiries may turn on adjudicative facts, legislative facts, or mixed questions of fact and law. "Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201, advisory committee's note. The Second Circuit treats undisputed "historical facts" as legislative facts that may be judicially noticed. *Oneida Indian Nation of New York v. State of N.Y.*, 691 F.2d 1070, 1086 (2d Cir. 1982).

Courts retain broad discretion—even when finding historical "legislative facts"—to consider the quality and reliability of the historical evidence presented. "[A]pplying the law of the past requires knowledge of the past, and lawyers must often defer to historical expertise on the relevant questions." *Baude & Sachs*, 37 L. &

---

historical facts stated in those articles, or identify those articles as exhibits they intend to introduce at trial. Thus, those articles and their contents are inadmissible hearsay.

Hist. Rev. at 810-11. "[W]hen facts or opinions found in historical materials or secondary sources are disputed, it is error to accept the data (however authentic) as evidence . . . at least without affording an opposing party the opportunity to present information which might challenge the fact or the propriety of noticing it." *Oneida Indian Nation*, 691 F.2d at 1086. In other words, if a historical fact is disputed, "[t]he better course is to conduct an evidentiary hearing at which the plaintiff may have its 'day in court,' and, through time-honored methods, test the accuracy of defendants' submissions and introduce evidence of its own." *Id.*; *see also United States v. Daniels*, 77 F.4th 337, 359-61 (5th Cir. 2023) (*Higginson, J.*, concurring) ("In my view . . . *Bruen* requires that an evidentiary inquiry first be conducted in courts of original jurisdiction, subject to party presentation principles, aided by discovery and cross-examination and with authority to solicit expert opinion").

"While . . . legislative facts are not subject to the same process for determination of reliability and admissibility as are adjudicative facts . . . they are not wholly immune from analysis entirely." *Barnett v. Raoul*, No. 23-cv-00209-SPM, 2024 U.S. Dist. LEXIS 204502, at *24 (S.D. Ill. Nov. 8, 2024), *appeal pending* 7th Cir. No. 24-3061 (*quoting* Timothy B. Dyk, *The Role of Non-Adjudicative Facts in Judicial Decisionmaking*, 76 Stan. L. Rev. Online 10, 18 n.52 (2023)). When parties offer competing versions of historical facts, "courts should pay particular attention to the source of the material," being "wary of untested empirical statements and predictions provided by interested parties" that have not been "peer reviewed or subject to any significant vetting," and where the parties did not have the opportunity to test the

reliability of the sources through the adversary process. *Id.* at 25-26; *see also Lane v. Cacace*, No. 22-CV-10989 (KMK), 2025 U.S. Dist. LEXIS 57913, at *13 (S.D.N.Y. Mar. 25, 2025) (refusing to consider proposed "legislative facts" that were inadmissible and had not been subjected to the adversarial process); *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin*, 742 F. Supp. 3d 421, 427-28 (D.N.J. 2024) (determining legislative facts by considering "all the expert reports," and relying "upon the information [the court] believes to be most credible"), *appeal pending* 3d Cir. No. 23-2506 and No. 24-2415.

The adversarial process has played out in at least one bench trial. In *Oregon Firearms Federation v. Kotek*, the court "heard testimony from twenty witnesses and received more than 100 exhibits into evidence." 682 F. Supp. 3d 874, 885 (D. Or. 2023). Notably, the *Kotek* court rejected thirteen documents as inadmissible hearsay, explaining that the documents, which plaintiffs offered as legislative facts, were nevertheless "replete with adjudicative facts" subject to the rules of evidence *Id.*, 886 n.2. Furthermore, the court emphasized that its function even as to the documents that did contain legislative facts was "to receive evidence and testimony that has been tested through the adversarial process." *Id.* Because the documents had not been subjected to the adversarial process, the court declined to give them any weight. *Id.* Finally, turning to the admitted portions of the record (including testimony from Prof. Spitzer and Prof. Rivas) the court proceeded to make findings of historical fact regarding "the evolution of firearms and weapons technology . . . societal concerns

that arose from the proliferation of such weapons and the regulations that were enacted to address those concerns." *Id.*, 899-900.

Consistent with the Second Circuit's guidance in *Oneida Indian Nation*, that is the course the Court should follow in identifying and weighing the record of historical facts here.

## <u>Conclusion</u>

At this late stage, the Court should find historical facts drawn from the uncontested record presented by State Defendants not give any weight to expert opinions or alleged historical facts from outside the record that were not disclosed in discovery and would be otherwise inadmissible at trial. Contrary to codefendant Bondi's suggestion, the *Bruen* test calls for more than a mere "legal inquiry" in this case. Though courts may "take judicial notice of undisputed facts whose accuracy cannot reasonably be questioned, Fed. R. Evid. 201(b)," *United States v. Vereen*, 152 F.4th 89, 101 n.3 (2d Cir. 2025) (citing *Oneida Indian Nation*, 691 F.2d at 1086), the principle of party presentation and the Court's role as a gatekeeper and factfinder helps ensure that those historical facts are, indeed, accurate.

///

STATE DEFENDANTS,

RONNELL HIGGINS, MARGARET A.
KELLEY AND PAUL J. NARDUCCI

WILLIAM TONG, ATTORNEY GENERAL

BY:    */s/ Blake T. Sullivan*
       Blake T. Sullivan (ct30289)
       Timothy J. Holzman (ct30420)
       James M. Belforti (ct30449)
       Assistant Attorney General
       Office of the Attorney General
       Special Litigation Section
       165 Capitol Avenue, 5th Floor
       Tel.: (860) 808-5020
       Fax: (860) 808-5347
       Blake.Sullivan@ct.gov
       Timothy.Holzman@ct.gov
       James.Belforti@ct.gov

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Blake T. Sullivan*
Blake T. Sullivan
Assistant Attorney General