UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZACHARY SUCCOW, SAMUEL TOWNE; CONNECTICUT CITIZENS DEFENSE LEAGUE, INC.; AND SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PAMELA JO BONDI, in her official capacity; RONNELL HIGGINS, in his official capacity; MARGARET A. KELLEY, in her official capacity; PAUL J. NARDUCCI, in his official capacity; JOHN BUCHERATI, in his official capacity; PATRICK DALEY, in his official capacity; <br><br> Defendants. | CIV. NO. 3:25-cv-250-SVN <br><br><br> March 2, 2026 <br><br><br><br> **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO THE COURT'S FEBRUARY 18, 2026 ORDER (DKT. 146)** |

      The Plaintiffs – Zachary Succow, Samuel Towne, Connecticut Citizens Defense League (CCDL), and Second Amendment Foundation (SAF) – submit this supplemental response in compliance with the Court's February 18, 2026 order directing them to address the defendants' standing and credibility arguments cited in its order. Dkt. 146.

**I.    Legal Principles Applicable To Standing:**

      To establish standing, a plaintiff must prove that (1) he "suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical;" (2) a causal connection exists "between the injury and the conduct complained of;" and (3) a favorable decision "is likely, as opposed to merely speculative," to redress the

1

injury. *Do No Harm v. Pfizer, Inc.*, 126 F.4th 109, 118 (2d Cir. 2025) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (cleaned up).

Ordinarily, a plaintiff must apply for a government program to establish his standing to challenge denial of the benefits of that program. *Id.* at 118. The exception to this rule is when a formal application would be a "futile gesture." *Id.* at 118. When futility is shown, a plaintiff only needs to demonstrate that he is "able and ready to apply." *Id.* at 118.

## II. Samuel Towne Has Established His Standing With Respect To Chief Daley's Arguments.

Chief Daley's argument that Towne lacks standing and his testimony is not credible cuts against the weight of the evidence and is legally meritless.[1] His argument focuses on the fact that Towne never applied for a permit from him, that Towne has been casual about obtaining a long gun permit, and that Towne, in Chief Daley's completely speculative view, is likely not a suitable candidate for a pistol permit. Dkt. 136, pp. 12-14. Daley's interpretation of the evidence does not carry the day – both as a factual matter and a matter of law.

First, Towne never applied for a permit from Chief Daley because it is legally futile to do so. Daley testified that, if an 18- to 20-year-old applied for a pistol permit from his department, his department would tell the person to apply upon their 21st birthday. Tr., 1/14/26, p. 24. If the person insisted on applying before turning 21, Daley also testified that the law would leave him no choice but to deny their application. *Id.*; *see also* Conn. Gen. Stat. § 29-28(c)(10) ("No state or temporary state permit to carry a pistol or revolver shall be issued

---

[1] Chief Daley starts by arguing that Zachary Succow does not live in Norwich and lacks standing to bring any claims against him. Dkt. 136, p. 12. Succow has never pursued claims against Chief Daley and does not respond to his argument.

under this subsection if the applicant… is less than twenty-one years of age"). Any application from Towne would be futile because the law would compel Daley to deny his application due to his age without ever reaching the question of suitability. Daley himself would never reach investigation, interview, or consideration of Towne's suitability, as he suggests in his brief, because he would deny the application simply because of Towne's age, leaving Towne statutorily prohibited from reapplying upon his 21st birthday.

Second, Daley's argument about Towne's lack of interest in obtaining a long gun permit is irrelevant. Although Towne testified that obtaining a long gun is important to him, Tr., 1/12/26, p. 136, he explained that he would not be able to protect himself with a long gun outside of his home. *Id.* Conn. Gen. Stat. § 29-35(a)(2) demonstrates why; by prohibiting the carrying of a firearm with the intent to display it unless they are hunting or in limited locations. Towne also explained that he intended to acquire, possess, and carry a handgun both in his home and in public for self-defense. Tr., 1/12/26, p. 129. Because Connecticut law makes it a crime to carry a long gun openly and it is impossible to carry one publicly for self-defense without displaying it openly, Pl. Ex. 2, ¶¶ 13-14, Towne's delay in pursuing a long gun permit sheds no light on the seriousness of his intent to acquire, possess, and carry a handgun for self-defense. Thus, Daley's argument about Towne's lack of interest in obtaining his long gun permit is legally irrelevant.

Lastly, Daley's allegation that Towne has "a fairly lackadaisical attitude to detail in general" is also legally irrelevant. Dkt. 136, p. 13. The question before the Court is not whether Towne is a suitable candidate for a pistol permit. Instead, the question is whether the denial of a permit application from him because he is not 21 or older violates the Second

Amendment. Any favorable decision from the Court will leave Daley free to evaluate Towne's suitability while prohibiting Daley from rejecting Towne's application out-of-hand because of Towne's age – something that Daley testified that he would do. Tr., 1/14/26, p. 24.

The uncontradicted evidence before the Court indicates that Towne intends to apply for a pistol permit from Chief Daley and that it is futile for him to do so under the challenged statutes because Daley would reject Towne's application based solely on his age. Thus, the Court should find that Towne has established standing.

### III. Zachary Succow Does Not Lack Standing Because He Did Not Submit An Application To Chief Bucherati.

Chief Bucherati makes the same incorrect argument as Chief Daley did: Succow lacks standing because he failed to submit an application. Dkt. 139, p. 4-5. Like Daley, Bucherati also argues that he never made any suitability determination about Succow, defeating any claim of an actual, concrete injury traceable to Bucherati. *Id.* These arguments fail for the same reasons Daley's arguments failed.

Succow never applied for a permit from Chief Bucherati because it is legally futile to do so. Bucherati testified that, if someone attempted to apply for a pistol permit and had a statutory disqualifier, his subordinates would try to dissuade the applicant from filing the application so as to save them money. Tr., 1/14/26, p. 217. Bucherati confirmed that the same process would apply to 18-20-year-old applicants. *Id.* at pp. 217-18. He also confirmed that he would deny an 18-20-year-old's pistol permit application based on the law. *Id.* at p. 218; *see also* Conn. Gen. Stat. § 29-28(c)(10) ("No state or temporary state permit to carry a pistol or revolver shall be issued under this subsection if the applicant… is less than twenty-one years

of age"). In other words, the law requires the denial of an 18-20-year-old's application regardless of whether they were the most suitable person alive.

The uncontradicted evidence before the Court indicates that Succow intends to apply for a pistol permit from Chief Bucherati and that under the challenged statutes, it is futile for Succow to do so because Bucherati would reject his application due to his age. Thus, the Court should reject Bucherati's argument.

### IV.     The Court Should Find That Zachary Succow Has Established Standing As To Chief Bucherati And The State Defendants' Arguments About His Incapacity.

Defendant Bucherati and the State Defendants' argument that Zachary Succow's physical injury deprives him of standing does not show that he lacks standing. Dkt. 136, pp. 17-25;[2] Dkt. 139, pp. 4-6.

First, the relevant inquiry for determining Succow's standing is not whether he was physically able to complete live-fire training, but rather whether he was physically ready and able to apply for a pistol permit. *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 56 (2d Cir. 2025) (explaining that, "to establish standing to challenge an allegedly discriminatory program," a plaintiff must either apply or demonstrate that it is futile to apply and that "they are able and ready to apply, but a discriminatory policy prevents them from doing so on an equal footing") (quoting *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 118 (2d Cir. 2025) (cleaned up)). The Supreme Court has confirmed that this is the appropriate standard in its cases establishing the "able and ready" standard. *See, e.g., Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666 (1993) (compiling cases

---

[2] Plaintiffs cite to the ECF pagination for the State Defendants' brief.

and applying standard). It explained that, "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Id.* at 666. Instead, the "injury in fact" results "from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* at 666.

In this case, Connecticut has imposed an insurmountable barrier (an age-based disqualifier) on Succow that he would not clear regardless of what he does or when he does it. His physical injury changed nothing about whether he could submit a pistol permit application or what the age-based disqualifier would do to his application. A ruling that Succow lacked standing because he could not complete the safety training required by Conn. Gen. Stat. § 29-28 would raise the standing bar to precisely the "but-for" bar that the Supreme Court has rejected for decades in its futility doctrine.

The State Defendants' cases are not to the contrary.

*Variscite* found that two cannabis companies were not "able and ready" to apply for cannabis production and sale licenses for a November 2023 retail licensing period ("CAURD") because they simply did not exist until well after the application window closed. 152 F.4th at 56. Common sense easily yields the conclusion that a party is not "able and ready" if they do not exist because "existence" is an implied predicate of "able and ready." Thus, the Second Circuit found that they lacked standing to challenge the November 2023 CAURD program. *Id.* No such situation exists in this case. Succow, a natural person, does exist and did at the

6

time this case was first filed, and he had and has the physical capacity to apply for a pistol permit from Bucherati.

*Hafner v. Mills*, 2024 WL 124277 (D. Me. Jan. 11, 2024) found that a New Jersey state prisoner was not "able and ready" to run for Congress in Maine because he failed to meet the requirements established by Article I, § 2, Clause 2 of the Constitution. In particular, the court found that he failed to allege that he was a Maine resident, intended to become a Maine resident before the election, was able to become a Maine resident before the election, or make any attempt to become a Maine resident. *Id.* at *2. Thus, the district court held that he lacked standing to challenge Maine's signature requirement because he was "ineligible for reasons other than the relevant state laws…." *Id.* at *2. This case is different from *Hafner* because nothing indicates that Succow could not apply for a pistol permit. He is not in jail, and nothing bars him from physically submitting the application, even if Defendant Bucherati and his subordinates attempted to dissuade him. Tr., 1/14/26, p. 217.

Likewise, the Supreme Court did not disturb any of its futility cases in *Carney v. Adams*, 592 U.S. 53, 63 (2020), which it described as "a highly fact-specific case." *Carney* rejected a Delaware lawyer's claim of an intent to apply for state judicial positions that was frustrated by Delaware's state constitutional division of judicial appointments between different major political parties. *See id. generally*. It cited, among other things, the lawyer's own testimony about his lack of interest in being a judge and his missed opportunities to apply in the periods he claimed he would have. *Id.* at 62-66. It rejected his claim of an intent to apply as being contradicted by the weight of the record in front of it, including the lawyer's own misunderstanding of whether he was eligible to apply. *Id.* at 64. *Carney*, however, did not decide

7

whether "a statement of intent alone under other circumstances could be enough to show standing." *Id.* at 64.

This case differs from *Carney*. Unlike the Delaware lawyer, Succow did not make factual errors about what obstacle would bar him from successfully obtaining a Connecticut pistol permit. Instead, he accurately testified that Connecticut's prohibition on 18-20-year-olds getting pistol permits prevented him from acquiring a handgun or applying for a pistol permit. Tr., 1/12/26, pp. 162-64, 173-74. His confusion over whether a NRA safety course was a requirement did not change his mental calculus for why he could not apply prior to reaching the age of 21, and the Defendants fail to submit any evidence to the contrary. In fact, Succow's belief is not wrong, and the Defendants cannot meaningfully dispute it – both as a matter of fact and law – because Conn. Gen. Stat. § 29-28 places it beyond question. Succow's factual mistake was in thinking that he was more eligible to *receive* a pistol permit than he actually was due to his lack of the completed safety training.[3] This is a far cry from *Carney* where the lawyer's failure to apply for judicial positions stemmed from his own lack of interest in applying and his factual mistake as to whether he was actually eligible.

What remains is unchallenged evidence about Succow pursuing permits related to firearms that are important to him. For instance, Succow obtained the necessary safety training to obtain his firearms hunting license in 2024-2025. Pl. Ex. 20, 21; Tr., 1/12/26, pp. 165-170. He also testified that obtaining his long gun eligibility certificate was important to him. Tr., 1/12/26, p. 173. He further testified to his completion of the necessary firearms safety course

---

[3] The undersigned reiterate that, in preparing Succow's declaration and advising him about the state of the law, they made an error of law in their approach to Conn. Gen. Stat. § 29-28.

8

to obtain a pistol permit. *Id.* at pp. 171-73. The same certificate would meet the requirements to obtain a long-gun eligibility certificate. *Compare* Conn. Gen. Stat. § 29-37p(b)(2) (long gun eligibility certificate) *with* Conn. Gen. Stat. § 29-28(c)(1)(B) (pistol permits). These unchallenged facts show that Succow, even laboring under the mistaken belief that training was not a prerequisite to obtaining a pistol permit, took steps to pursue the permits that are important to him.

Succow's professed intent was sufficient at the start of this litigation to confer standing. His actions since have reinforced that his intent is a strong one despite his mistaken beliefs, including the ones the undersigned bear some responsibility for based on their misreading of Conn. Gen. Stat. § 29-28.

The Defendants recognize that the evidence before the Court may cause the Court to conclude that Succow's intent is sufficient to confer standing on him. As an alternative argument, they ask the Court to discount that evidence because of the factual inaccuracies in Succow's initial affidavit (Pl. Ex. 1). Dkt. 137, pp. 19-25; Dkt. 139, pp. 4-6. The Court should decline that invitation.

Every practicing attorney has encountered the classic lying witness in a deposition or in court testimony. That classic witness doubles down on lies, fights the attorney's effort to discover the truth, and resists every effort to acknowledge a mistake. Succow did none of those things.

The Court had the opportunity to observe Succow when the State Defendants confronted him during cross-examination about the mistake in his initial declaration in this case. Succow's reaction was one of surprise. The measure of his character though is no more

9

clear than his response to the State Defendants' questions that he knew were not favorable reflections on him or his case. He did not resist the effort to uncover the truth. He did not double down on the mistake. He did not blame someone else. Instead, Succow immediately answered honestly and confessed the error.

> Q. So I'm going to direct you to paragraph 7 here. I'm sorry, paragraph 8. Can you see that okay?
> A. Yes, I can.
> Q. It says "Except for my age, I meet all of the federal and Connecticut requirements to obtain a Connecticut pistol permit." See that?
> A. Yes, I do.
> Q. That was inaccurate, Mr. Succow; correct?
> A. I see that, yes.
> Q. Okay. You didn't know at the time that it was inaccurate?
> A. At that time, no, I did not.
> Q. Before you signed this declaration did you do anything to try to confirm the accuracy of that statement before you signed it?
> A. No, I did not.

Tr., 1/12/26, pp. 184-85.

Succow's candor continued when Chief Bucherati's counsel questioned him:

> Q. And just to put a point on it, so when this suit was filed and you said you met all the requirements, you really didn't meet all the requirements, did you?
> A. That is correct.

*Id.* at p. 187.

He remained candid on his own counsel's redirect examination.

> Q. Mr. Succow, when this declaration which is Exhibit 1 was drafted, were you -- did you know all of the federal requirements to obtain a Connecticut pistol permit?
> A. I was not a hundred percent aware as of how it shows.
> Q. Did you know all of the Connecticut requirements?
> A. I did not. I thought I did in the moment, but I was mistaken.

*Id.* at pp. 187-88.

Succow remained candid when the Court took up the inquiry and invoked the concept of perjury – a concept that he knows carries criminal consequences:

> THE COURT: Do you understand that you submitted that declaration under penalty of perjury?
> THE WITNESS: Yes.
> THE COURT: You testified that you did not know all of the federal and Connecticut requirements to obtain a handgun eligibility certificate; correct?
> THE WITNESS: That is correct.
> THE COURT: So then why under penalty of perjury did you state that you met all of those requirements if you didn't know what they were?
> THE WITNESS: At the moment I had thought I met it. I thought it was only an age requirement. And after I put in -- after I would put in my request to the state, then I would have to go through the courses. So I wasn't aware at that moment exactly what they were. I thought that I had met them at that time.

*Id.* at pp. 190-91.

Succow's account remained consistent and candid under intense pressure for a young man of his age. He did not have the benefit of counsel's coaching on how to answer the Court's questions even though the Court essentially conducted a quasi-criminal inquiry. He looked the Court in the eye when he answered its questions. He looked every counsel in the eye when he answered their questions. He did not obfuscate or attempt to hide what occurred. He did not deny the mistake, despite the uncomfortable nature of the situation. Instead, Succow confessed his error despite knowing that it could be bad for his case and have personal consequences beyond the mere loss of his case.

To the extent that the State Defendants claim his explanation is muddled, Succow would have either been coached or not human if he did not experience some confusion in response to the Court's questions. He undoubtedly experienced massive butterflies – both during the State Defendants' questioning and the Court's questioning. . Even if they could have been articulated more clearly, Succow's answers were truthful.

The State Defendants implicitly urge the Court to apply a principle commonly used in immigration law: *falsus in uno, falsus in omnibus* [false in one thing, false in everything]. Dkt. 137, p. 20 (citing *Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007). They urge the Court to deem all of Succow's testimony unreliable. *Id.* The Court should decline to do so.

*Falsus in uno, falsus in omnibus* "is not an inflexible rule of evidence and its application is delegated to the [factfinder]…." *Norfolk & W. Ry. Co. v. McKenzie*, 116 F.2d 632, 635 (6th Cir. 1941). In other words, the rule is permissive, not mandatory. *Id.*

> There is no positive rule of law which excludes evidence from consideration entirely on account of the wilful falsehood of a witness as to some portion of his testimony. Such disregard of his oath is enough to justify the belief that the witness is capable of falsification on all matters about which he testifies but, once a witness is determined by the judge to be qualified to speak, the weight and credibility of every portion of his testimony is for the jury.

*Id.*

The Second Circuit has also placed cautionary limitations on the doctrine in the immigration context. For instance, it has held that courts must assess evidence that is independently corroborated. *Id.* at 170. It has also cautioned false statements made under circumstances perceived to be "coercive" or "threatening" may not be a sufficient ground for invoking the principle. *Id.* at 171. Lastly, the Second Circuit has held that the submission of evidence that a witness does not know, and has no reason to know, is inaccurate is not a basis for the application of the doctrine. *Id.* at 171.

The Plaintiffs do not dispute that the Court must make a credibility determination as to Succow and that the mistake in his declaration is proper for the Court to weigh. Plaintiffs, submit however, that application of *falsus in uno, falsus in omnibus* is unwarranted here. Succow's uncertainty arose only when he answered the Court's questions about how his declaration was

12

drafted – *after* the Court had invoked the prospect of perjury.[4] Tr., 1/12/26, pp. 190-92. His overall testimony demonstrated candor in admitting his mistake, even when it was plain that his recognition of that mistake may jeopardize his case and potentially lead to consequences beyond this case. That testimony clearly indicated that Succow relied on his counsel to properly inform him. Most importantly, the Court got the truth without resistance even though the truth did not benefit Succow.

Nothing about the truth implicated the accuracy of Succow's intent to apply for a pistol permit. Instead, Succow's testimony as to his intent and desire to apply for a pistol permit did not meet with any evidentiary challenge. The State Defendants never asked him directly whether he was serious about his intent to apply for a pistol permit. Instead, they simply explored how Succow got involved in the case and his shared view with his father that the case would be a good learning experience. *Id.* at pp. 181-82. That is an ancillary issue that in no way reflects on Succow's overall intent.

The Court has the job of weighing evidence in this case. When it weighs Succow's testimony, it should take into account all of the factors discussed above. Those factors demonstrate that Succow's trial testimony was truthful, even when it did not benefit him. Thus, the Court should decline to discredit his testimony and should find that he has standing.

**V.    Succow Has Standing To Challenge Impediments On Private Party Transfers Even If Towne May Not.**

---

[4] The undersigned do not suggest that this invocation was improper on the part of the Court. It was a fair appraisal to everyone what the stakes were and an important reminder to Succow as to the importance of being truthful.

Towne's testimony may deprive him of standing to challenge impediments on private party transfers, but Succow has standing on that issue because he testified that he would acquire a handgun from a private party if it were legal to do so. The State Defendants argue that Towne and Succow's testimony has deprived them of standing to challenge impediments to private party transfers in this case. Dkt. 137, p. 25. They may be correct as to Towne,[5] but not as to Succow.

Succow testified on his direct examination that he understood that he would be required to purchase a firearm from an FFL if he obtained a pistol permit. Tr., 1/12/26, p. 174. He testified, consistent with that understanding, that he would look to purchase a firearm from a registered firearms dealer if he obtained a pistol permit. Tr., 1/12/26, p. 174-75. Consistent with his understanding, he testified that he would not look to purchase a handgun privately from an individual. *Id.* On his redirect examination, Succow was asked again whether he would attempt to obtain a firearm from a private party. *Id.* at p. 190. He answered that he would if it were legal. *Id.* at p. 190. The State Defendants did not object to this question nor did they seek recross as to it.

Succow's clarified answer on redirect makes clear that he would not seek to obtain a firearm via private transfer if it were illegal to do so – which it is – but that he would seek to obtain a firearm from a private party if it were legal for him to do so. That is sufficient to establish a concrete intent to do so. To the extent that the State Defendants submit his testimony is not credible on this issue, the Plaintiffs have already dealt with his credibility in the preceding section, and the State Defendants have not adduced any evidence to contradict

---

[5] *See* Tr., 1/12/26 at p. 153.

14

Succow's testimony. Thus, he has standing to challenge the impediments on private party transfers.

Dated: March 2, 2026                 Respectfully submitted,

                                       //s//  *Doug Dubitsky*  
                                       Doug Dubitsky, Esq.  
                                       (ct21558)  
                                       LAW OFFICES OF DOUG DUBITSKY  
                                       P.O. Box 70  
                                       North Windham, CT 06256  
                                       Telephone: 860.808.8601  
                                       Facsimile: 866.477.1120  
                                       Email: doug@lawyer.com

                                       //s//  *Craig C. Fishbein*  
                                       Craig C. Fishbein, Esq.  
                                       (ct25142)  
                                       FISHBEIN LAW FIRM, LLC  
                                       100 South Main Street  
                                       P.O. Box 363  
                                       Wallingford, Connecticut 06492  
                                       Telephone: 203.265.2895  
                                       Facsimile: 203.294.1396  
                                       E-mail: ccf@fishbeinlaw.com

                                       //s//  *Cameron L. Atkinson*  
                                       Cameron L. Atkinson, Esq.  
                                       (ct31219)  
                                       ATKINSON LAW, LLC  
                                       122 Litchfield Rd., Ste. 2  
                                       P.O. Box 340  
                                       Harwinton, CT 06791  
                                       Telephone: 203.677.0782  
                                       Facsimile: 203.672.6551  
                                       Email: catkinson@atkinsonlawfirm.com

                                       *Attorneys for the Plaintiff*

## **CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Cameron L. Atkinson /s/