UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZACHARY SUCCOW, | : | 3:25-cv-00250-SVN |
| ET AL. | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| PAMELA J. BONDI, ET AL. | : | |
| *Defendants* | : | July 2, 2025 |

**STATE DEFENDANTS' SUPPLEMENTAL BRIEF**

The Supreme Court's decision in *Wolford v. Lopez*, __ U.S. __ (June 25, 2026), does not help Plaintiffs in this case.  If anything, it confirms that Connecticut's age-based restrictions are constitutional.[1]

<u>Methodology of Historical Analysis</u>

*Wolford* does not alter the methodology for conducting historical analyses under *Bruen*'s second step.[2]  At the outset, *Wolford* did not disturb the Second Circuit's holdings—discussed in cases like *Frey v. City of N.Y.*, 157 F.4th 118, 130 (2d

---

[1] That *Wolford* does not help Plaintiffs is evidenced by the fact that, after issuing *Wolford*, the Supreme Court denied certiorari in two cases upholding age-based restrictions rather than vacating the judgments and remanding them for reconsideration ("GVR") in light of *Wolford*.  Order List, June 30, 2026 (*McCoy*, No. 25-24 (4th Cir.); *NRA, Inc.* (11th Cir.), No. 24-1185); *see Lawrence v. Chater*, 516 U.S. 163, 167, 116 S. Ct. 604, 607 (1996) (GVR orders are appropriate when there is a "reasonable probability" a new development may impact the outcome of the lower court's decision).

[2] Because the Court's discussion of the first prong of the *Bruen* test—whether location-based restrictions fall within the plain text of the Second Amendment—is not particularly relevant to the age-based restrictions in this matter, the State Defendants will focus on the Court's discussion of the second prong.

1

Cir. 2025)—that the court's historical inquiry is not pegged to 1791, but must also include any historical evidence up through and surrounding 1868 when the Fourteenth Amendment was adopted. Slip op. at 10 n.7 (Barrett, J., concurring); *accord United States v. Hemani*, __ U.S. __, Slip Op. at 7 n.3 (June 18, 2026) ("we need not decide today" whether 1791 or 1868 is the primary point of reference).

*Wolford* also reaffirmed that the historical inquiry is flexible. The court's analysis is not limited to actual regulations, but may include "[a] variety of sources, including scholarship[.]" *Wolford*, slip op. at 7. Nor did *Wolford* detract from the principle that "it is not dispositive whether comparable historical regulations exist in significant numbers." *Frey*, 157 F.4th at 128. Instead, *Wolford* confirmed that the government "may rely on a single analogue or a group of analogues" to satisfy its burden. Slip op. at 7. Ultimately, *Wolford* confirms that the Court's analysis must be holistic, considering various factors such as (1) "the number of jurisdictions in which they were adopted"; (2) "the extent to which they were well-accepted"[3]; and (3) "whether any analogue or collection of analogues is 'relevantly similar' to the modern law." *Id.* at 8. And it reaffirmed that a historical analogue need not be a "dead ringer" to be sufficiently comparable. *Id.*

---

[3] That acceptance need not be express, but may be tacit if the historical regulations were unchallenged. Slip op., at 7-8. The Second Circuit had previously recognized the same thing. *Frey*, 157 F.4th at 128 (explaining that "a lack of a constitutional dispute regarding a type of gun regulation" is evidence it was viewed as constitutional).

None of *Wolford*'s discussion of *Bruen*'s historical methodology detracts from any of the State Defendants' arguments in this case, or abrogates any of the case law upon which they relied in making their arguments.

Application of the Historical Methodology

*Wolford* addressed a Hawaii law that prohibited carrying firearms on private property open to the public without the express consent of the property owner. Since a "single analogue" could be enough to sustain a defendant's burden, *Wolford* engaged in a granular analysis of the proffered analogues to determine whether they were sufficient. That record comprised a handful of historical laws: a group of historical laws from Hawaii that reflected a near total ban on the possession of firearms; a group of analogues from the colonial era that regulated unauthorized hunting; a single analogue from Louisiana in 1865; and a single analogue from Oregon in 1893. The Court discussed each of these analogues and explained why, in light of those "important inquiries," each analogue or group of analogues was not sufficient. *Wolford*, Slip Op., at p. 19-24.

First, the Court rejected the historical Hawaiian laws because they reflected mere "local attitudes" that were inconsistent with tradition of public carry throughout the rest of the county, and there were not widely accepted. *Wolford*, Slip Op., at pp. 18-19. Second, the Court rejected the colonial-era laws as insufficiently similar because they targeted unauthorized hunting, and so were narrower in purpose and affect than Hawaii's default rule. *Wolford*, Slip Op., at pp. 21-22. Third, the Court determined that the single 1893 Oregon law, which broadly prohibited anyone from

3

trespassing armed upon any enclosed premises, was merely a single statute, was "adopted nearly a century after the adoption of the Second Amendment and well after the adoption of the Fourteenth Amendment," and thus shed "little if any light on the meaning of the Second Amendment right." *Wolford*, Slip Op., at pp. 22-23. Similarly, the Court determined that the 1865 Louisiana state, which also broadly prohibited any person from carrying firearms onto another's property without consent, was neither widespread nor widely accepted. *Id.*, at p. 23.

None of that applies to the historical record in this case. The undisputed record before the Court includes more than 100 historical restrictions on minors' ability to access and use firearms. From 1763 through 1859, laws that restricted minors' ability to access and use firearms were enacted in ten states. Spitzer Decl., Ex. 500 ¶ 20; Ex. 502 (listing laws). From there, restrictions on minors' possession and use of weapons proliferated, with over 100 laws restricting minors' access to firearms enacted between 1861 and 1933, across 46 states. Spitzer Decl., Ex. 500 ¶¶ 22-23; Ex. 502 (listing laws). That is more than enough to meet the government's burden on *Bruen*'s step two.[4]

---

[4] Plaintiffs indicated that they also intend to address the impact of *Hemani* in their supplemental brief. ECF No. 155. *Hemani* does not help Plaintiffs, either. Like *Wolford*, *Hemani* did not alter the methodology courts must apply when conducting *Bruen*'s second step. *See Hemani*, slip op. at 4-5 (discussing historical inquiry). And its application of those standards was again limited to the narrow and unique circumstances before it—whether there was a historical tradition of prosecuting, imprisoning, and disarming for life, individuals who use controlled substances, regardless of "what controlled substance an individual uses, in what amounts he does so, or whether his drug use has ever made him a danger to himself or others." *Id.* at 5. The Court's conclusion that the Second Amendment does not permit that result was explicitly limited to those unique circumstances, and has no application in this

STATE DEFENDANTS,

RONNELL HIGGINS, MARGARET A.
KELLEY AND PAUL J. NARDUCCI

WILLIAM TONG, ATTORNEY GENERAL

BY:    */s/Timothy J. Holzman*
Blake T. Sullivan (ct30289)
Timothy J. Holzman (ct30420)
James M. Belforti (ct30449)
Assistant Attorney General
Office of the Attorney General
Special Litigation Section
165 Capitol Avenue, 5th Floor
Tel.: (860) 808-5020
Fax: (860) 808-5347
Blake.Sullivan@ct.gov
Timothy.Holzman@ct.gov
James.Belforti@ct.gov

---

case. *See id.* at 18, 19 (noting that "[i]n many respects, this case is a narrow one," and that the decision does not address numerous other related questions because "[a]ll that is before us is one, if surely ambitious, theory").

5

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Timothy J. Holzman*
Timothy J. Holzman
Assistant Attorney General