**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ZACHARY SUCCOW,<br>ET AL.<br>*Plaintiffs* | : | 3:25-cv-00250-SVN |
| v. | : | |
| PAMELA J. BONDI, ET AL.<br>*Defendants* | : | OCTOBER 16, 20263 |

**STATE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION AT ECF NO. 164**

Plaintiffs' request to amend their complaint post-judgment should be denied because they have not established a valid basis to vacate the already entered judgment and, without that showing, the application to intervene and motion to amend the complaint is improper. Plaintiffs were aware of the fatal defects in the standing for months before the judgment entered and could have undertaken reasonable efforts to add new parties. They never sought a stay of the case to find alternative Plaintiffs or in any way indicated a plan to cure the standing defects through new parties. Instead, they risked continuing with these individual Plaintiffs, allowed the Defendants and this Court to expend the resources of conducting a bench trial and post-trial briefing with these parties. Now that the case has been concluded at the district court in a manner Plaintiffs do not like, they want to open a final judgment and replace the existing evidentiary record and start over. Because there is no basis for reconsidering the judgment in favor of the Defendants, and because indulging the intervening applicants' motion would result in undue prejudice to the

State Defendants, the motion to open and the contingent application to intervene should be denied.

## I. Background

After discovery, motion practice, a bench trial, and extensive post-trial briefing, the Court entered judgment in favor of the defendants on July 30, 2026. Party standing had been a central point of dispute, almost from the inception of this case, and it resulted in three of the four plaintiffs, Connecticut Citizens Defense League (CCDL), Second Amendment Foundation (SAF), and Zachary Succow being dismissed without the Court reaching the merits of their claims against the State Defendants. *See* ECF No. 111, 162. In the post-trial decision, the Court determined that CCDL and SAF had standing to pursue a claim against the Federal Defendant, only. (ECF No. 162, p. 24 n.9.) Ultimately, with respect to the remaining claims against the Federal Defendant and the State Defendants, the Court found against CCDL, SAF, and Samuel Towne on the merits.

Standing problems, aside, there is nothing preventing the remaining Plaintiffs from commencing an appeal.[1] Similarly, there is nothing preventing John Sleeman and Nicholas Slater, the applicants to intervene, from filing a new lawsuit to challenge the age restriction laws in their own right. Nevertheless, Plaintiffs and the applicants move to open this judgment and to add the new parties.

[1] Towne has since turned 21 and any appeal he would have had is now moot because the age restriction laws that prevented him from applying to obtain and carry a handgun no longer apply.

## II. Law & Argument

"[A] plaintiff seeking to amend a complaint post-judgment must 'first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b).' This is because 'it would be contradictory to entertain a motion to amend the complaint without a valid basis to vacate the previously entered judgment.'" *Williams v. Mulligan*, 2026 U.S. Dist. LEXIS 44153, at *3 (D. Conn. Mar. 4, 2026) (Nagala, J.) (quoting *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (internal quotation marks and brackets omitted).

"The standard for granting a motion for reconsideration is strict." *Ricciuti v. Gyzenis,* 832 F. Supp. 2d 147, 165 (D. Conn. 2011) (citing *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)); *see also* D. Conn. Civ. R. 7(c)(1) ("Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions"). "A party seeking reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (citation and internal quotation marks omitted). "The scope of review on motions for reconsideration is limited to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging gaps of a lost motion with additional matters." *Morien v. Munich Reinsurance America., Inc.*, 270 F.R.D. 65 (D. Conn. 2010). Critically, a motion for reconsideration is not an opportunity to get a proverbial '"second bite at the apple."' *Cloutier v. Ledyard Board of Education*,

2022 U.S. Dist. Lexis 49364, at *2-3 (D. Conn. March 21, 2022) (Arterton, J.) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *cert. denied*, 569 U.S. 918 (2013)).

The three primary grounds for reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Roman v. Leibert*, 2017 U.S. Dist. LEXIS 158559, at *1 (D. Conn. Sep. 26, 2017) (Hall, J.) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)). Plaintiffs have not met the strict standard to reopen a judgment because there is no change in the law, newly discovered evidence, or manifest injustice that requires a different outcome. The evidentiary record is not sufficient to establish CCDL or SAF's Article III standing and the applicants' untested hearsay statements are insufficient to justify reopening.

**A. There is no intervening change in controlling precedent that would permit the remaining Plaintiffs to establish Article III standing.**

As an initial matter, to pursue any associational claim against the State Defendants, Plaintiffs still must demonstrate Article III standing by a preponderance of the evidence. In light of the trial record, no change in controlling law permits a different result than dismissal for lack of standing.

Plaintiffs do not identify any change in the controlling law that would change the result for Succow as an individual or for CCDL and SAF as organizations. The only change in law that affects even part of CCDL and SAF's associational claims under 42 U.S.C. § 1983—the Second Circuit decision in *Defending Education v. Croton-Harmon Union Free School District, et al.*, No. 24-1900 overruling *Aguayo v.*

*Richardson*, 473 F.2d 1090 (2d Cir. 1973) and adopting the test from *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977)—does not, by itself, establish CCDL and SAF's associational standing to pursue claims against the state.[2] The Court should reject any argument to the contrary because extending the Organization Plaintiffs' Article III standing against the State Defendants, which is a necessary condition to open the judgment and permit intervention, risks manifest injustice to the State Defendants and clear error based on this record.

**1. Extending the Organization Plaintiffs' standing to pursue a claim against the State Defendants risks manifest injustice.**

As a preliminary matter, the Court should not assume that CCDL and SAF have standing to seek post-trial relief against the State Defendants merely because of the earlier decision permitting the Organization Plaintiffs to pursue a claim against the Federal Defendant. A Court may "depart from the law of the case for 'cogent' or 'compelling' reasons including . . . 'the need to correct a clear error or prevent manifest injustice.'" *De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009). Such reasons exist here. The State Defendants could not (and did not) move for dismissal at the close of evidence because the Organization Plaintiffs' claims against them had already been dismissed. Had the Organization Plaintiffs' claims against the State Defendants survived the motion to dismiss, or even if CCDL or SAF

[2] The Second Circuit's decision in *Defending Education* was released after Plaintiffs filed the motion to open and Plaintiffs did not file an amended motion addressing its impact. Presumably, CCDL and SAF would argue that with *Aguayo* overruled, the associational claims against the State Defendants should be restored and permitted to continue because of the Court's earlier conclusion that the Organization Plaintiffs alleged facts supporting standing to sue the federal government.

presented witnesses at trial in support of the claims against the Federal Defendant (which they did not), then the State Defendants stood ready to challenge their associational standing based on information obtained in discovery. But, due to Plaintiffs' decision not to call witnesses or submit any documentary evidence on behalf of CCDL and SAF, the State Defendants were deprived of any opportunity to contest the Organization Plaintiffs' standing at trial. It would be manifestly unjust to continue that deprivation and presume standing now.

**2. The evidentiary record does not support the Organization Plaintiffs' standing to pursue associational claims on behalf of Succow or the applicants to intervene.**

Adding to the risks of manifest injustice to the State Defendants, restoring the Organization Plaintiffs' associational claims risks clear error because there is no evidence in the record supporting standing. Associational claims carve only a narrow exception from the ordinary rule that a litigant 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004) quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). A general opposition to a statute is not enough to establish standing to challenge it because "a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." *All. for Hippocratic Med.*, 602 U.S. at 381. These organizations must show something more that would distinguish them from the public, at large, or else every firearms law could be challenged based only on an organization's belief that the law is illegal. Construing associational standing so

broadly improperly erodes the gatekeeping purposes of Article III standing which is meant to screen out "plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *All. for Hippocratic Med.*, 602 U.S. at 381. Thus, where an organization sues on behalf of its members, it must demonstrate "that (a) at least one of the association's members would otherwise have standing to sue in its own right—i.e., has constitutional standing; (b) the interests the association seeks to protect are germane to its purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *All. for Open Soc'y Int'l, Inc. v. United States Agency for Int'l Dev.*, 651 F.3d 218, 228 (2d Cir. 2011) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977).

CCDL and SAF's claims of associational standing fail the first and second prongs of the *Hunt* test. As of the judgment against Succow, and once Towne turned 21, no individual member of CCDL or SAF was left with standing to sue in their own right. Apart from testifying that they were "members" of the organizations, Succow and Towne did not describe what the Organization Plaintiffs do or what benefits came with membership, let alone how protecting their individual interests was germane to the purpose of CCDL or SAF. The Organization Plaintiffs did not put forth any evidence at trial, at all, let alone evidence demonstrating their purpose or membership. Apart from Succow, the Organization Plaintiffs do not know who among their members is prevented from obtaining or carrying a handgun solely because of the age restrictions. (See Discovery Responses of CCDL, attached as **Exhibit A**, pp.

008-012; Discovery Responses of SAF, attached as **Exhibit B**, pp. 008-013.)

There is no basis for the Court to conclude, on this record, that another member of CCDL or SAF has standing to sue in their own right or that the interests the association seeks to protect are germane to its purpose. The affidavits of Sleeman and Slater cannot establish Article III standing for CCDL and SAF or post hoc create a record to permit this Court or an appellate panel to reach or the merits without substantial additional discovery. Therefore, regardless of the Second Circuit's decision to overrule *Aguayo*, there is no change in controlling precedent that requires this Court to alter its decision dismissing the Organization Plaintiffs for lack of standing. *See, e.g.*, *Conn. Citizens Def., League, Inc. v. Thody*, 2024 U.S. App. LEXIS 1056, at *7-8 (2d Cir. Jan. 17, 2024) (Summary Order) ("[A]ssuming *arguendo* associational standing could be asserted by an organization on behalf of its members in a Section 1983 lawsuit, CCDL's blanket allegations that the police chiefs violated the rights of 'similarly situated CCDL members' are insufficient to confer standing on behalf of members other than the individual plaintiffs and save its current Section 1983 claims for injunctive relief from dismissal due to mootness.")

**B. There is no "newly discovered" evidence or manifest injustice that could permit reconsideration.**

Additionally, Plaintiffs' motion should be denied because Plaintiffs do not specifically identify (1) newly discovered evidence or (2) manifest injustice requiring reconsideration under Rule 59(e).

First, the only "new" evidence, the affidavits of Sleeman and Slater, is not newly discovered evidence that can be admitted into the trial record in support of the

motion for reconsideration. "[M]otions under Rule 59(e) are not vehicles for bringing before the court theories or arguments that were not advanced earlier. Nor may the motion present evidence which was available but not offered at the original . . . trial." *Palmer v. Sena*, 474 F. Supp. 2d 353, 355 (D. Conn. 2007) (citation and internal quotation marks omitted). If CCDL and SAF knew of Sleeman and Slater (or any other member under age 21 who could plausibly participate in this lawsuit), it was incumbent upon them to identify them before trial, or at least in the months before judgment, so that the record could be developed and tested through the adversarial process.[3] Plaintiffs' failure to timely identify these members and offer evidence of their membership at trial precludes reconsideration now.

Moreover, just as with Succow and Towne's testimony at trial, the Court should not admit those affidavits, which are hearsay, and weigh them without testing their veracity. *See* 12 Moore's Federal Practice - Civil § 60.42 ("The requirements that newly discovered evidence must be both admissible and credible would seem self-evident. There is no reason to set aside a judgment on the basis of evidence that could not be admitted at a new trial or, if admitted, would be unconvincing"). For Plaintiffs to presume the admissibility and probative value of the affidavits, without State Defendants having an opportunity to challenge the evidentiary foundation through discovery and cross examination, and where the affidavits of other individual plaintiffs were proven inaccurate, is unduly prejudicial.

[3] On the other hand, if CCDL and SAF did not know of any members under age 21 who could participate in the lawsuit until the instant motion was filed, that casts further doubt on the notion that challenging the age restriction is germane to the organizations' interests.

Second, the burden of maintaining a justiciable claim during an appeal is not enough to establish "manifest injustice" in support of reconsideration of a judgment. Even if it was, there is no basis to excuse Plaintiffs from that burden because it is entirely self-inflicted: the result of Plaintiffs' delay in bringing this case and refusal to identify other individuals with standing at an earlier juncture. As this Court observed at the outset of this case in March 2025, the age restriction laws "cannot fairly be characterized as new, so at least the organizational Plaintiffs' delay in filing suit to enjoin the laws is plausibly measured in years. Additionally, the individual Plaintiffs turned 18 well over a year ago, and thus could have brought suit months ago." (Decision denying Plaintiffs' application for a temporary restraining order, ECF No. 34, p. 8.) At the same time, the Court noted that CCDL and SAF alleged having "membership rosters in the tens of thousands" and "that the enforcement of laws central to this case has 'adversely and directly harmed and injured' many of their individual Connecticut members." (*Id.*, pp. 8-9.) Nevertheless, Plaintiffs waited over a year to offer evidence of any member being harmed besides Succow and Towne. Whatever Plaintiffs' reasons for not disclosing Sleeman and Slater earlier, it is much too late a stage in this case to do so now.

Ultimately, no "manifest injustice" would result if the Second Circuit does not reach the merits on appeal. The Organization Plaintiffs and proposed intervenors could simply file a new action challenging the age restriction laws and potentially avoid the standing problems that are now baked into the evidentiary record in this case. The inconveniences that may follow from starting over do not support

reconsideration. Plaintiffs chose their strategy in this case and cannot now be heard to complain that the consequences of their choices constitute a manifest injustice.

**C. The application to intervene should be rejected because it is untimely.**

Even if Plaintiffs could meet the strict requirements necessary to support reconsideration, the Court should still deny the application to intervene because it is untimely. "[A]n application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention, but rather turns on whether the applicant has demonstrated [1] that its application is timely, [2] that it has an interest in the subject of the action, [3] that disposition of the action might as a practical matter impair its interest, and [4] that representation by existing parties would not adequately protect that interest." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (citation and quotation marks omitted). "[A] failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *A.H. v. McDonald*, 147 F.4th 270, 281 (2d Cir. 2025) (citation and quotation marks omitted).

The application for intervention is based solely on the "ultimate merits" of the claims and whether an appellate panel could reach them. That is not a proper basis for intervention, and the proposed intervenors otherwise fail to demonstrate that permissive intervention is timely. "Factors that the district court may consider include: (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the

presence of unusual circumstances militating for or against a finding of timeliness." *A.H. v. McDonald*, 147 F.4th 270, 281 (2d Cir. 2025).

All of these timeliness factors weigh against intervention. First, the applicants allegedly could have applied for a handgun permit as early as June 20, 2026, when they each completed a basic pistol safety course, before the July 30th judgment. Sleeman and Slater do not offer any justification for waiting two months, *after* judgment entered, to act. Second, as explained above, the State Defendants would be severely prejudiced if the intervenors' affidavits were entered into evidence and credited without any opportunity for discovery and cross examination. Third, disposition of this action will not impair the proposed intervenor's interests because there is nothing stopping the applicants (or CCDL and SAF) from commencing a new action to challenge the age restriction laws. Finally, just as in March 2025, the inaction of the Organization Plaintiffs militates against a finding of timeliness. There is no reason why CCDL and SAF could not have used their institutional resources to identify these or similar applicants earlier, at a substantially less burdensome and prejudicial point in the proceedings.

Therefore, the applicants should not be permitted to intervene as a matter of right or with the Court's permission.

## **Conclusion**

For the foregoing reasons, Plaintiffs' motion to open and the application to intervene should be denied.

STATE DEFENDANTS,

RONNELL HIGGINS, MARGARET A. KELLEY AND PAUL J. NARDUCCI

BY: */s/ Blake T. Sullivan*

Blake T. Sullivan (ct30289)
Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue, 5th Floor
Tel.: (860) 808-5020
Fax: (860) 808-5347
Blake.Sullivan@ct.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/Blake T. Sullivan*
Blake T. Sullivan
Assistant Attorney General